UNITED STATES of America, Appellee,

v.

Harry J. LAUGHY, Jr., Defendant–Appellant.

No. 1429, Docket 89–1157.

United States Court of Appeals, Second Circuit.

Argued Aug. 16, 1989.

Decided Sept. 19, 1989.

William K. Sessions, III, Sessions, Keiner, Dumont & Barnes, Middlebury, Vt., submitted a brief, for defendant-appellant.

David V. Kirby, Asst. U.S. Atty., Chief, Crim. Div., D.Vt., argued, and with George J. Terwilliger, III, U.S. Atty., R. Jeffrey Behm, Asst. U.S. Atty., submitted a brief, for appellee.

Before MINER and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

PER CURIAM:

Harry J. Laughy, Jr., appeals from the sentence imposed by the United States District Court, District of Vermont (Billings, J.), after his plea of guilty to unarmed bank robbery in violation of 18 U.S.C. § 2113(a). Laughy was sentenced pursuant to the Federal Sentencing Guidelines.

This appeal raises the question of whether an inoperable pellet gun is a "dangerous weapon" within the meaning of Guideline § 2B3.1(b)(2)(C). We find that it is and therefore affirm the district court.

## BACKGROUND

On July 5, 1988 Laughy walked into the Merchants Bank in Jericho, Vermont. Brandishing what appeared to be a large pistol, Laughy ordered the bank's tellers to fill a pillowcase with cash. He escaped in a car and was later arrested in Stowe, Vermont. Of the $9,200 in stolen cash, the arresting officers recovered $9,189 from Laughy's car. The officers could not locate the weapon.

In order to locate the weapon, the government enlisted Laughy's aid. In return for his cooperation, the government agreed not to use the weapon against him at trial. The weapon was ultimately retrieved. It was a pellet gun, inoperable at the time of the robbery because it was unloaded and needed a fresh $CO_2$ cartridge.

Laughy was charged in a one-count indictment with armed bank robbery in violation of 18 U.S.C. § 2113(d). He later pled guilty to the lesser charge of unarmed bank robbery. The presentence report recommended a three level increase in the base offense level for robbery because Laughy had brandished a dangerous weapon during the commission of the crime. *See* Guideline § 2B3.1(b)(2)(C) (if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by three levels). Laughy objected to the application of § 2B3.1(b)(2)(C) inasmuch as the pellet gun was inoperable at the time of the robbery.

The district court conducted a hearing on Laughy's objections to the presentence report. In support of the application of § 2B3.1(b)(2)(C), the government introduced photographs of Laughy taken during the robbery which showed him brandishing a weapon. In addition, the government introduced a forensic analysis of the photographs which concluded that the weapon was a pellet gun. Laughy requested an additional hearing for the purpose of challenging the forensic analysis. This request was denied.

The district court determined that Laughy did brandish a weapon during the robbery, and that the weapon was a pellet gun. In making this determination, the court relied on the photographs and the forensic analysis, and not on the actual weapon. Accordingly, Laughy's base of-

---

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

fense level was increased by three levels pursuant to § 2B3.1(b)(2)(C).

### DISCUSSION

Laughy argues on appeal that an inoperable pellet gun is not a "dangerous weapon" within the meaning of § 2B3.1(b)(2)(C). In the alternative, he argues that the district court should have scheduled a new hearing to determine the accuracy of the forensic reports. Both arguments must be rejected.

 Commentary to Guideline § 1B1.1, Application Note 1(e), states that a pellet gun is a dangerous weapon. The Supreme Court has held that a gun is a dangerous weapon whether loaded or unloaded. *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986) (unloaded gun is a dangerous weapon within the meaning of the federal bank robbery statute, 18 U.S.C. § 2113(d)). *Accord U.S. v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989); *U.S. v. Martinez Jimenez*, 864 F.2d 664, 666 (9th Cir.1989); *U.S. v. Gray*, 808 F.2d 1432 (11th Cir.1989). As the *McLaughlin* Court explained:

> [A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.

476 U.S. at 17–18, 106 S.Ct. at 1678 (footnote omitted).

Laughy has not offered, nor do we perceive, any sound reason to depart from the Supreme Court's analysis in *McLaughlin*. Consequently, we hold that an inoperable pellet gun is a dangerous weapon for the purposes of Guideline § 2B3.1(b)(2)(C).

 The photographs taken during the robbery clearly showed Laughy brandishing a gun, and during the sentencing hearing Laughy's counsel admitted that the gun was a pellet gun. On this record, the district court was entirely correct in applying § 2B3.1(b)(2)(C) without a further evidentiary hearing.

 Finally, Laughy appears to urge that consideration of the gun as a factor in his sentence violated his agreement with the government that the gun would not be used against him. However, he has conceded in his brief that the agreement did no more than preclude use of the gun as evidence at trial. Accordingly, it was not error for the district court to consider the gun in determining an appropriate sentence.

The judgment of the district court is affirmed.