UNITED STATES of America, Appellee,

v.

Fred AGRON, Defendant–Appellant.

No. 556, Docket 90–1404.

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1990.

Decided Dec. 7, 1990.

Bonnie Barnes, Middlebury, Vt. (William K. Sessions, III, Sessions, Keiner, Dumont, Barnes & Everitt, Middlebury, Vt., on the brief), for defendant-appellant.

John P. Tavana, Asst. U.S. Atty., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., David V. Kirby, Chief, Crim. Div., Burlington, Vt., on the brief), for appellee.

Before KAUFMAN, NEWMAN, and WINTER, Circuit Judges.

PER CURIAM:

Fred Agron appeals from the June 12, 1990, judgment of the District Court for the District of Vermont (Franklin S. Billings, Jr., Chief Judge) convicting him on his guilty plea of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (1988). Agron was sentenced to 95 months' imprisonment, five years' supervised release, and a fifty dollar special assessment. On appeal, Agron challenges only his sentence, arguing that the District Court erred in applying Sentencing Guideline section 2D1.1(b)(1) (1990) because there was an insufficient basis for finding that the stun gun he possessed constituted a "dangerous weapon."

Section 2D1.1(b)(1) provides that where "a dangerous weapon (including a firearm) was possessed during commission of [the drug trafficking] offense" the base offense level should be increased by two levels. Agron admits his possession of the stun gun at the time of the offense, but argues that the gun does not meet the definition of a dangerous weapon.

▮ First, Agron claims that the District Court did not have a sufficient evidentiary basis for determining the nature and effects of a stun gun. However, at the sentencing hearing he did not contest the Government's assertion that the function of a stun gun is to totally incapacitate a person temporarily. Rather, he argued that section 2D1.1(b)(1) requires more than temporary incapacity. As a result, no evidentiary showing was required. *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir.1989) (undisputed statements in presentence report may be basis of court's finding of facts).

▮ Second, Agron contends that a stun gun does not meet the definition of a "dangerous weapon." Application note 3 of section 2D1.1(b)(1) applies the definition of "dangerous weapon" found in the Commentary to section 1B1.1, and also notes that the two-level enhancement for possession of such a weapon is based on the danger of increased violence where traffickers possess weapons. "Dangerous weapon" is defined as "an instrument capable of inflicting death or serious bodily injury." Section 1B1.1, Application Note 1(d). "Serious bodily injury" is defined as "injury involving extreme physical pain or the *impairment* of a function of a bodily member, organ, or mental faculty; or requiring medical intervention." Section 1B1.1, Application Note 1(j) (emphasis added). The District Court correctly determined that the definition in Note 1(j) does not require that the impairment be permanent. *Cf. id.*, Application Note 1(h) (defining "permanent" injury). The incapacitation caused by a stun gun constitutes sufficient "impairment," particularly in light of the Guidelines' rationale behind the two-level enhancement for such possession. *See United States v. Wallace*, 800 F.2d 1509, 1513 (9th Cir.1986) (stun gun is dangerous weapon under Federal Aviation Act of 1958, § 902(*l*), 49 U.S.C.App. § 1472(*l*)), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987).

Additionally, this Circuit has taken a broad view of the definition of "dangerous weapon" under the Sentencing Guidelines. In *United States v. Laughy*, 886 F.2d 28, 30 (2d Cir.1989), we held that an inoperable pellet gun was a dangerous weapon under Sentencing Guideline section 2B3.1(b)(2)(C), which also uses the definitions in Application note 1 of the Commentary to section 1B1.1.

 

The judgment of the District Court is affirmed.