**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis Stephen DUKOVICH,
Defendant–Appellant.**

No. 92–2628.

United States Court of Appeals,
Eleventh Circuit.

Jan. 6, 1994.

Joel T. Remland, Asst. Federal Public Defender, Orlando, FL, for defendant-appellant.

Robert W. Genzman, U.S. Atty., Bruce Hinshelwood, David Rhodes, Asst. U.S. Attys., Orlando, FL, for plaintiff-appellee.

Before DUBINA and CARNES, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Appellant Dennis Stephen Dukovich ("Dukovich") pled guilty to one count of armed bank robbery with a handgun in violation of 18 U.S.C. §§ 2113(a) and (d) and one count of use of a handgun in the commission of a bank robbery in violation of 18 U.S.C. § 924(c). The district court sentenced Dukovich to a term of incarceration of ten years on count one and five years on count two, to run consecutively, under the mandatory sentencing provision of 18 U.S.C. § 924(c), followed by five years supervised release. In this appeal, Dukovich raises a variety of issues challenging his sentence. After a thorough review of the record, we see no merit to any of the issues Dukovich presents. We feel compelled to discuss the issue of whether tear gas constitutes a dangerous weapon under the United States Sentencing Guidelines ("U.S.S.G." or "guidelines") § 2B3.1(b)(2)(B), because it is an issue of first impression in this circuit. The remaining issues we summarily affirm.

## I. FACTS

Dukovich used a handgun to rob a South-Trust Bank in Holly Hill, Florida. More specifically, Dukovich, wearing mirrored sunglasses, a false nose, and a fake moustache, proceeded to the window of teller Mary Renfrow ("Renfrow"), who was visibly pregnant, and announced, "You know why I'm here. You know what I want. You have ten seconds. Give me all your money." One bank employee activated the camera button while another employee activated the alarm. Dukovich produced a small .25 caliber black semi-automatic pistol with his left hand and pulled a pillowcase from his trousers. Dukovich directed bank employee Lisa Curry ("Curry") to empty her purse onto a desk near the vault. He then began to collect the money from Renfrow's window. The other tellers brought over the money from their respective teller drawers, and Dukovich placed the money in the pillowcase.

After Dukovich collected the money from the teller windows, he ordered teller Curry to enter the vault and get him all of the money, starting with $100 bills. When Curry told Dukovich the vault was locked, Dukovich placed the gun at her back and forced her to enter the vault with him. Curry emptied the contents of the cash safe into the pillowcase. Before leaving, Dukovich ordered Curry and the other employees to lie on the floor. Dukovich then sprayed tear gas from a small device causing all the employees present to suffer a burning sensation in their faces and in their throats.

## II. STANDARD OF REVIEW

■ We review *de novo* the district court's interpretation of the Sentencing Guidelines. *United States v. Gonzalez,* 2 F.3d 369 (11th Cir.1993); *United States v. Odedina,* 980 F.2d 705, 707 (11th Cir.1993). This court reviews a sentencing court's factual findings for clear error. *United States v. Spraggins,* 868 F.2d 1541, 1543 (11th Cir. 1989). The question whether a particular guideline applies to a given set of facts is a question of law and thus, is subject to *de novo* review. *United States v. Rockmand,* 993 F.2d 811, 812 (11th Cir.1993) (quoting *United States v. Shriver,* 967 F.2d 572 (11th

Cir.1992)); *United States v. Yates,* 990 F.2d 1179, 1182 (11th Cir.1993). *See also United States v. Alpert,* 989 F.2d 454, 457 (11th Cir.1993) (whether particular facts fit within the guidelines definition of obstruction of justice involves the application of law to facts and is therefore subject to *de novo* review). *But see United States v. Shores,* 966 F.2d 1383, 1986 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 353, 121 L.Ed.2d 268 (1992). ("In reviewing a district court's application of the sentencing guidelines, this court examines findings of fact under a clearly erroneous standard.").

In *United States v. Huppert,* 917 F.2d 507 (11th Cir.1990), this court held that the question of whether facts found by the district court fit within particular guideline provisions is to be reviewed *de novo.* The court explained:

> Whether a particular guideline applies, however, is a mixed question of law and fact. *United States v. Scroggins,* 880 F.2d 1204, 1206 n. 5 (11th Cir.1989), *cert. denied,* [494] U.S. [1083], 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). We review the district court's findings of fact under the clearly erroneous standard; its application of law to those facts is subject to de novo review. *United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir.), *cert. denied,* [497] U.S. [1029], 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990). 'Factual issues include basic, primary or historical facts, such as external events and credibility determinations.' *Martin v. Kemp,* 760 F.2d 1244, 1247 (11th Cir.1985). Whether Huppert was an accessory after the fact, *i.e.,* whether he was assisting others to escape punishment, is a legal conclusion subject to de novo review. We find that the district court erred in concluding that Huppert attempted to protect others and was therefore liable as an accessory after the fact.

*Id.* at 510.

## III. DISCUSSION

■ Dukovich argues that the district court erred in finding that tear gas is a dangerous weapon capable of inflicting death or serious bodily injury as defined in

U.S.S.G. § 1B1.1 comment (n. 1(b)) (1989) and thus, that the sentencing court's imposition of a four-level enhancement for the use of a dangerous weapon, pursuant to U.S.S.G. § 2B3.1(b)(2)(D) (1989), was improper. Moreover, Dukovich contends that the district court failed to make specific findings of fact as to the degree of pain, bodily injury, or side effects suffered by the victims, the amount of tear gas used, the extent of exposure, and the manner of use.

"Dangerous weapon" is defined as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1 comment (n.1(d)) (1989). Serious bodily injury means an "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 comment (n.1(j)) (1989).

The district court explicitly based its findings on the evidence adduced in the evidentiary portion of the initial sentencing hearing. The undisputed facts presented in that hearing included the following: (1) as he was leaving, Dukovich sprayed tear gas into the bank, where the victims lay face down on the floor; (2) all victims present suffered a burning sensation in their faces and throats, and some experienced eye pain and severe headaches; (3) the tear gas struck a teller near her left eye; (4) two of the women in the bank were visibly pregnant; and (5) tear gas can cause eye damage, vomiting, loss of breath or a rash, and pregnant women should not be exposed to it. Based on these facts, the district court concluded that Dukovich's use of tear gas constituted the use of a dangerous weapon within the meaning of U.S.S.G. § 1B1.1 (1989).

The district court correctly concluded that tear gas is an instrument capable of causing extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty and thus, can be a "dangerous weapon" under U.S.S.G. § 2B3.1(b)(2)(D) (1989). Curry testified that she experienced eye pain and a severe headache as a consequence of Dukovich's use of tear gas. Curry also stated that the tear gas "made everyone

tear up," and she sought medical treatment from her physician. The pre-sentence report indicated that teller Kavanaugh was struck near her left eye, causing a severe burning sensation. Officer Sprague of the Holly Hill Police Department testified at the hearing that the tear gas device utilized by Dukovich "will tear up your eyes, it can induce vomiting, loss of breath. Sometimes it will cause a rash." R2–12. Officer Sprague further stated that the tear gas may cause "temporary damage" to the eyes, and that pregnant women should not be exposed to it. R2–14.

In holding that tear gas is a "dangerous weapon" within the meaning of the guidelines, we find persuasive the Eighth Circuit's decision in *United States v. Brown*, 508 F.2d 427, 430 (8th Cir.1974). Although that decision was not rendered in the context of the sentencing guidelines, the court sustained a finding that a loaded tear gas gun constituted a "dangerous weapon" within the meaning of 49 U.S.C. § 1472($l$), which prohibits carrying dangerous weapons on aircraft. Part of the court's rationale was that the tear gas in the tear gas gun was propelled by a .22 caliber cartridge. *Id.* at 430. Nevertheless, the court also considered that "the tear gas expelled could cause great bodily harm in the form of powder and chemical burns." *Id.* Even more persuasive are court decisions which hold other types of instruments to be "dangerous weapons." *See, e.g., United States v. Garrett*, 3 F.3d 390 (11th Cir.1993) (toy gun is "dangerous weapon" within meaning of statute enhancing penalties for bank robbers); *United States v. Koonce*, 991 F.2d 693 (11th Cir.1993) (BB gun that looks like real firearm and is perceived by robbery victim to be such is "dangerous weapon" rather than "firearm" for sentencing enhancement purposes); *United States v. Shores*, 966 F.2d at 1387–88. (although not decided under guidelines then in effect, court affirmed a three-step enhancement for use of a toy gun that appeared to be a "dangerous weapon"); *United States v. Boyd*, 924 F.2d 945, 946–47 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 98, 116 L.Ed.2d 70 (1991) (road flare); *United States v. Agron*, 921 F.2d 25, 26 (2nd Cir.1990) (stun gun); *United States v. King*, 915 F.2d 269, 272 (6th Cir.

1990) (nunchunks); *United States v. Sanchez*, 914 F.2d 1355, 1363 (9th Cir.1990), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991) (car); *United States v. Heldberg*, 907 F.2d 91, 94 (9th Cir.1990) (unloaded and inoperable guns); *United States v. Smith*, 905 F.2d 1296, 1300 (9th Cir.1990) (pellet gun); *United States v. Medved*, 905 F.2d 935, 939–40 (6th Cir.1990), *cert. denied*, 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991) (toy gun a dangerous weapon because the apprehension created by the display of what appears to be a genuine gun can bring on heart attacks and other untold medical consequences).

## IV. CONCLUSION

The district court properly determined that tear gas is a "dangerous weapon" within the meaning of the guidelines. The evidence demonstrated that the employees sprayed with the tear gas suffered injuries involving the impairment of a function of a bodily member, organ or mental faculty which were serious in nature. This meets the definition of "dangerous weapon" contemplated in the guidelines. Accordingly, we affirm Dukovich's sentence.

AFFIRMED.