# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————————

No. 97-2646

——————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Fernando Bartolotta, | * | |
| | * | |
| Appellant. | * | |

——————————

Submitted:  December 9, 1997
Filed:  August 18, 1998

——————————

Before BOWMAN,[1] FLOYD R. GIBSON, and HANSEN, Circuit Judges.

——————————

FLOYD R. GIBSON, Circuit Judge.

On March 21, 1997, a jury convicted Fernando Bartolotta of interfering with commerce by threats of violence, see 18 U.S.C. § 1951 (1994), transporting stolen property across state lines, see 18 U.S.C. § 2314, and bank robbery, see 18 U.S.C. § 2113(a).  The district court sentenced Bartolotta to a 220-month term of imprisonment.

## I.    BACKGROUND

--------

[1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

On January 12, 1992, Bartolotta, along with several other men, burglarized a home in West Frankfort, Illinois. The men took $8,000 in cash, twelve gold coins, a .38 revolver, a gold necklace, and a Mickey Mouse watch from a safe in the basement of the home.

On January 21, 1992, Bartolotta, Thomas Consiglio, and Timothy Hinton robbed the First Bank in Creve Coeur, Missouri. Consiglio approached the drive-through window in his car, while Bartolotta and Hinton observed from a distance. Consiglio gave the bank teller, Erin Miller, a note which stated that he had a bomb and Miller would die if she did not give him all the money in her drawer. Miller gave Consiglio approximately $6000 in cash, which Consiglio shared with Bartolotta and Hinton. Prior to the robbery, Miller provided Hinton with information about the bank and had initially stated that she would like to be involved in the robbery. However, she later told Hinton that she did not wish to be involved and that she would turn the others in if they continued with the plan.

Finally, on March 22, 1992, Bartolotta, Hinton, and two other men attempted to rob an armored car courier who was scheduled to collect money from a Schnuck's supermarket. During the attempted robbery, Hinton sprayed the armored car courier with chemical mace. One of Bartolotta's other accomplices, Robert Trask, sprayed mace in the face of Schnuck's employee, Barbara Kettler.

On March 21, 1997, Bartolotta was convicted of interfering with commerce by threats of violence, see 18 U.S.C. § 1951, transporting stolen property across state lines, see 18 U.S.C. § 2314, and bank robbery, see 18 U.S.C. § 2113(a). The district court determined that Bartolotta's base offense level was twenty. The court increased Bartolotta's offense level for several reasons, including use of a dangerous weapon during an offense in which serious bodily injury occurred. The court also found that Bartolotta had a criminal history category of six. Bartolotta received a 220-month term of imprisonment.

Bartolotta raises several issues on appeal:  (1) he argues that the United States Attorney engaged in prosecutorial misconduct; (2) he claims that the evidence was insufficient to support his conviction; and (3) he contends that the district court erred in calculating his sentence.  Because we conclude that the district court[2] did not err, we affirm Bartolotta's conviction and sentence.

## II.  DISCUSSION

### A.  Prosecutorial Misconduct

Bartolotta argues that the government engaged in prosecutorial misconduct.  "We evaluate claims of prosecutorial misconduct under a two-part test.  First, we ask whether the prosecutor's comments were in fact improper, and second, if they were, we look to whether the remarks prejudiced the defendant's right to a fair trial." United States v. Warfield, 97 F.3d 1014, 1028 (8th Cir. 1996), cert. denied, 117 S. Ct. 1119 (1997).  We review the district court's refusal to grant a mistrial based on prosecutorial misconduct for an abuse of discretion.  See id.

Bartolotta claims that the government committed prosecutorial misconduct during its cross-examination of Bartolotta's brother, Leo, who provided Bartolotta's primary alibi testimony for the January 12, 1992, burglary of the West Frankfort home. January 12, 1992, fell on a Sunday, and Leo testified that Bartolotta always attended family dinners on Sundays.  The government attempted to discredit this testimony by asking Leo whether Bartolotta had attended any family dinners in 1994.  The government knew that Bartolotta could not have attended the family dinners in 1994 because he was in prison at the time.  Before allowing Leo to answer the question, the government therefore suggested to Bartolotta's attorney that he caution Leo not to

[2]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

reveal that Bartolotta missed the dinners due to his imprisonment. Bartolotta's attorney cautioned Leo, and Leo did not reveal Bartolotta's 1994 imprisonment.

Bartolotta also contends that, during its closing argument, the government improperly suggested that Leo must have been lying about Bartolotta's alibi because he failed to inform the authorities about the alibi when he first learned that Bartolotta was suspected of committing the crime. The government, however, claims that it made no such suggestion.

It is doubtful that the government committed any improper actions in its cross-examination of Leo or in its closing argument. However, even were we to assume that the government's actions were improper, we would still conclude that the government did not engage in prosecutorial misconduct because the prosecutor's remarks did not prejudice Bartolotta's right to a fair trial. See id. at 1029. The government severely discredited Bartolotta's claimed alibi during its cross-examination of Leo. A video-tape of Leo's daughter's January 12 birthday party clearly established that Leo lied about the timing of the day's events such that Bartolotta could have attended the party and still participated in the West Frankfort burglary. Therefore, we conclude that even if the prosecutor's cross-examination of Leo or comments during closing argument were improper, Bartolotta's right to a fair trial was not prejudiced as a result.

Bartolotta further argues that the government improperly questioned Timothy Hinton about his fear of Bartolotta during its redirect questioning. We conclude that the prosecutor was merely clarifying an issue that was opened up by the defense on cross-examination. See United States v. Braidlow, 806 F.2d 781, 783 (8th Cir. 1986). Therefore, the government did not commit prosecutorial misconduct during its redirect examination of Hinton.

Finally, Bartolotta claims that the district court should have granted a mistrial because the cumulative effect of the government's errors prevented him from receiving

a fair trial. We disagree. The evidence against Bartolotta on all counts was quite strong, and there is nothing which would compel us to conclude that he did not receive a fair trial. The district court did not abuse its discretion in failing to find prosecutorial misconduct.

### B. Sufficiency of the Evidence

Bartolotta argues that the government did not present evidence sufficient to sustain his conviction for bank robbery under 18 U.S.C § 2113(a), "which criminalizes the taking of money or property from a bank, credit union, or savings and loan, either by force and violence, or by intimidation." United States v. Smith, 973 F.2d 603, 604 (8th Cir. 1992). "Intimidation is conduct reasonably calculated to put another in fear . . .[, and] the acts of the defendant must constitute an intimidation to an ordinary, reasonable person." Id. (citation and quotations omitted). Bartolotta contends that the government did not establish that Consiglio took the money from First Bank by intimidation because the bank teller, Erin Miller, knew about the planned robbery and therefore could not have been intimidated by Consiglio's threat to bomb the bank.

When considering the sufficiency of the evidence, we consider the evidence in the light most favorable to the guilty verdict. See United States v. Wade, 111 F.3d 602, 604 (8th Cir. 1997). We must give the government "the benefit of all reasonable inferences that might be drawn from the evidence . . . [and w]e will reverse a conviction for insufficient evidence and order the entry of a judgment of acquittal only if no construction of the evidence exists to support the jury's verdict," United States v. Darden, 70 F.3d 1507, 1517 (8th Cir. 1995) (quotation and citation omitted), cert. denied, 116 S. Ct. 1449 (1996). After considering the evidence in this light, we conclude that the government presented evidence sufficient to support Bartolotta's conviction under section 2113(a).

While Miller initially agreed to participate in the bank robbery, she eventually told Hinton that she did not want to be involved, and would inform the authorities of the responsible parties if the crime occurred. Miller testified at trial that she was not certain that Consiglio was a part of the scheme Hinton had informed her about. Miller reasonably could have feared that Consiglio was not involved in the scheme of which Hinton had informed her and was thus willing to set off a bomb if she did not give him the money. We therefore conclude that the evidence was sufficient to support the jury's verdict.

## C.     Sentencing Issues

Bartolotta raises two sentencing issues on appeal. First, he claims that the district court erred in concluding that mace is a dangerous weapon under United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") §2B3.1(b)(2)(D) (Nov. 1997). A dangerous weapon is "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. §1B1.1, comment (n. 1(d)). A serious bodily injury is one "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." Id., comment (n.1(j)). After a thorough review of the record, we conclude that serious bodily injury did in fact result from the use of the mace. Barbara Kettler, the Schnuck's employee who was sprayed in the face with mace during the attempted robbery of the armored car, testified that she developed chemical pneumonia as a result of the incident, and that she missed almost two weeks of work. Kettler had to take daily steroid shots for over four months and steroid pills for one year to cleanse the mace from her system. Thus, we conclude that the government's evidence sufficiently established that the mace was used as a dangerous weapon in this case.[3]

---

[3]Bartolotta argues that this case is similar to United States v. Harris, 44 F.3d 1206, 1214-16 (3rd Cir.), cert. denied, 514 U.S. 1088 (1995), in which the Third

Bartolotta also claims that the district court erred in assessing his criminal history category because the district court improperly counted his prior sentences as unrelated sentences under U.S.S.G. §4A1.2(a)(2). "We review for clear error a district court's determination of whether the government has proven that a defendant's prior crimes were unrelated." United States v. Maza, 93 F.3d 1390, 1400 (8th Cir. 1996), cert. denied, 117 S. Ct. 1008 (1997). "[P]rior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. §4A1.2, comment (n. 3). Bartolotta's prior offenses did not occur on the same occasion, nor were they part of a single plan. Furthermore, the crimes were not consolidated "because no formal order of consolidation was issued and the cases proceeded to sentencing under separate docket numbers." Maza, 93 F.3d at 1400. Therefore, the district court did not err in determining Bartolotta's criminal history category.

## III.  CONCLUSION

For the reasons set forth in this opinion, we affirm the judgment of the district court.

Affirmed.

---

Circuit determined that the government had not established that mace was a dangerous weapon. However, unlike Bartolotta's case, the victims of the mace spraying in Harris did not testify about having any significant effects from the mace. See id. at 1216. In Bartolotta's case, Kettler's testimony established that a serious bodily injury did in fact result from the use of the mace.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.