# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3170

_____

United States of America,       *
       *
      Appellee,       *   Appeal from the United States
       *   District Court for the
    v.       *   Western District of Missouri.
       *
Frenklyn Piggie,       *
       *
      Appellant.       *

_____

Submitted: September 10, 2002
Filed: January 17, 2003

_____

Before BOWMAN, LAY, and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Following a jury trial, Frenklyn Piggie was convicted of being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (1994 & Supp. V 1999).[1] The District Court[2] sentenced Piggie to ninety-two months of

_____

[1] The felon-in-possession statute, 18 U.S.C. § 922(g)(1), provides that "[i]t shall be unlawful for any person–(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to knowingly possess a firearm. The statutory maximum sentence for a violation of § 922(g)(1) is ten years. 18 U.S.C. § 924(a)(2).

[2] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

imprisonment followed by three years of supervised release. Piggie challenges his sentence. For the reasons discussed below, we affirm.

## I.

On March 8, 2000, Kansas City, Missouri, police officers executed a search warrant at Piggie's residence. The police officers arrested Piggie after he attempted to escape out the back door of the residence. A search of the premises produced five firearms: a Norinco Model SKS rifle; a Federal Arms Co., Model FA91 rifle; a BFI, Model CAR-AR, .223 rifle; a Sig Sauer, P229, semi-automatic handgun; and a Beretta, Model 92 FS, 9mm handgun with a laser sight. The search also recovered ammunition, four bulletproof vests, firearm magazines, a handgun holster, and numerous papers and documents addressed to Piggie. At trial, the parties stipulated that Piggie had been convicted of at least one felony for which he had received a term of imprisonment of greater than one year. The parties also stipulated that the firearms were manufactured outside the state of Missouri and that the Norinco assault rifle was inoperable as received in the laboratory, but that it is designed to expel a projectile by action of an explosion. The other four firearms were found operable.

Following his conviction, Piggie raised several objections to the probation officer's calculation of his base offense level and criminal history category as reported in the presentence report (PSR). At sentencing, the District Court adopted the PSR's sentencing calculations and sentenced Piggie to ninety-two months, the lowest end of the applicable guidelines range.[3] Piggie now appeals his sentence.

---

[3]The District Court sentenced Piggie under the November 1, 2000 edition of the United States Sentencing Guidelines (U.S.S.G.) manual.

II.

A.

Piggie first challenges his sentence on the basis that, under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the District Court erred in setting his base offense level at 22 under U.S.S.G. § 2K2.1(a)(3). According to Piggie, this determination violated his constitutional rights because there was no indication in the indictment or jury finding that he was in possession of an assault weapon within the meaning of 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30). The Supreme Court held in <u>Apprendi</u> that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added).

We conclude that <u>Apprendi</u> has no application to Piggie's case. As we observed in <u>United States v. Aguayo-Delgado</u>, "[t]he rule of <u>Apprendi</u> only applies where the non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict." 220 F.3d 926, 933 (8th Cir.), <u>cert. denied</u>, 531 U.S. 1026 (2000). Similarly, in <u>United States v. Lewis</u>, we specifically found that possession of multiple firearms would be used to enhance a guidelines offense range if the enhancement does not affect the statutory maximum sentence. 236 F.3d 948, 950 (8th Cir. 2001). The Supreme Court, in affirming a decision of the Fourth Circuit, recently confirmed our Circuit's reading of <u>Apprendi</u>. <u>See</u> <u>Harris v. United States</u>, --- U.S. ---, 122 S. Ct. 2406 (2002) (holding sentencing judge did not violate defendant's constitutional rights in making a finding on the preponderance of the evidence that increased the statutory minimum sentence because the sentence imposed fell within the statutory maximum prescribed for the crime of which the defendant had been properly convicted). In Piggie's case, the felon-in-possession statute imposes a ten-year statutory maximum sentence. <u>See</u> 18 U.S.C. § 924(a)(2). The District Court sentenced Piggie to a sentence below this statutory maximum.

Thus, Piggie's appeal does not raise a meritorious Apprendi issue, as his sentence was not "beyond the prescribed statutory maximum." Apprendi, 530 U.S. at 490; see also Harris, 122 S.Ct. at 2416-19.

B.

Piggie next contends that the District Court erred in setting his offense level at 22, under U.S.S.G. § 2K2.1(a)(3), by relying on his possession of the Norinco assault rifle. He also argues that the District Court impermissibly increased his base offense level by an additional two levels, pursuant to § 2K2.1(b)(1)(B), for his possession of five firearms. Specifically, Piggie argues that the government failed to introduce evidence that he was in possession of a banned assault weapon under 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30)(A)(i) and that the government presented insufficient evidence of his possession of five operable firearms.

In the PSR, the probation officer found that one of the five firearms seized at the residence "was a Norinco assault weapon, listed under 18 U.S.C. § 921(a)(30) [sic]" and that a base offense level of 22 was therefore recommended under the guidelines. PSR ¶¶ 8, 13. Piggie's trial counsel filed a general objection to this determination, arguing that his base offense level should not be set above 20 because the jury did not make any findings as to the kinds of weapons he possessed. Piggie did not make any other objection to the recommended increase in his base offense level. In the probation officer's addendum to the PSR, he recommended that the District Court overrule Piggie's objection because there were "adequate facts to justify the application of 2K2.1(a)(3)." Addendum to the PSR.[4] During the sentencing

_____

[4]There can be no doubt the probation officer was aware of the Norinco's inoperability, inasmuch as the PSR notes, in ¶ 8, that "four of the five firearms were confirmed as operable." Although Piggie knew of the Norinco's inoperability, he failed to object in his written objections to the PSR and during his sentencing to the probation officer's recommendation to set his base offense level at 22 for his

hearing, Piggie again stated his lack-of-jury-findings objection to the base offense level computation. At that time, Piggie also agreed with the District Court that his objection was, in essence, an "Apprendi objection" to the base offense level. Sentencing Tr. at 2-3.

In this appeal, Piggie contends the District Court erred by setting his base offense level at 22 because there was not sufficient evidence that he was in possession of an "operable" Norinco assault weapon. Under Title 18, a firearm rendered *permanently* inoperable is exempted from the class of firearms banned under the statute. 18 U.S.C. § 922(v)(3)(B)(ii) (1994 & Supp. V 1999). Piggie (and the dissent) argue that, because the parties stipulated that the Norinco rifle was inoperable, the District Court should not have increased his base offense level for possession of this weapon. Piggie, however, made no specific objection at sentencing concerning the factual basis of the District Court's determination to set Piggie's base offense level at 22 for his possession of the Norinco assault weapon, nor did he claim this firearm was permanently inoperable, nor did he do anything at all to raise "permanent inoperability" as a disputed issue. Piggie's argument that he made a sufficiently specific objection to put the government to its proof concerning the non-permanent inoperability of the Norinco assault rifle is belied by the record.[5]

The dissent contends that we have somehow obviated the government's burden of proof regarding the District Court's determination to set Piggie's base offense level

_____

possession of this weapon. See Addendum to the PSR ("adequate facts to justify the application of 2K2.1(a)(3)"). Consequently, as discussed infra, our review of this issue is for plain error only.

[5]Though the dissent asserts that the government was "hoodwinking" Piggie by stipulating that the Norinco firearm was inoperable, post at 12, there is absolutely no evidence in the record to support this assertion. We are not inclined to attribute base motives to the government—or to any other party for that matter—on the basis of sheer speculation.

at 22 for his possession of the Norinco assault weapon. Post at 12. But inasmuch as Piggie failed to make a sufficiently specific objection to put the government to its proof on this issue, we cannot accept the dissent's position on this point. See, e.g., United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993) ("The burden of proof is on the government with respect to the base offense level and any enhancing factors. . . . Unless a defendant has admitted the facts alleged in a presentence report, the report is not evidence and is not a legally sufficient basis for making findings on *contested* issues of material fact." (emphasis added)), cert. denied, 510 U.S. 1139 (1994). As stated previously, Piggie did not raise "permanent inoperability" as a contested issue of fact. The District Court therefore was entitled to accept as true the allegations in the PSR regarding this weapon. See United States v. LaRoche, 83 F.3d 958, 959 (8th Cir. 1996) (holding that "[a] district court may accept as true all factual allegations contained in the PSR that are not specifically objected to by the parties") (citing United States v. Montanye, 996 F.2d 190, 192-93 (8th Cir. 1993) (en banc), cert. denied, 519 U.S. 938 (1996)).

Piggie and the dissent also argue that a specific objection to the base offense level was lodged during sentencing because counsel for Piggie and the government informed the District Court that it had to make a factual determination about whether "the enhancement" applies. Sentencing Tr. at 4-5. Contrary to these claims, the sentencing transcript makes clear that Piggie's objection related solely to the number of weapons possessed by Piggie, not their characteristics. Specifically, the objection raised the question, addressed below, of whether an additional two-level increase (bringing Piggie's offense level to 24) is appropriate under U.S.S.G. § 2K2.1(b)(1)(B) because of Piggie's possession of five firearms. The objection did not concern the setting of the base offense level at 22 grounded on Piggie's possession of a Norinco assault rifle that was not permanently inoperable. Accordingly, having failed to make a specific objection to direct the District Court's attention to whether the Norinco assault weapon was permanently inoperable, Piggie "must show plain error to

prevail." United States v. Jones, 195 F.3d 379, 383 (8th Cir. 1999); see also LaRoche, 83 F.3d at 959.[6]

Under the plain error standard, Piggie must show that "(1) the district court erred; (2) the error was plain or clear under then current law; and (3) the error affected [his] substantial rights." United States v. Davidson, 195 F.3d 402, 408-09 (8th Cir. 1999), cert. denied, 528 U.S. 1180 (2000). Piggie cannot demonstrate plain error. The applicable guideline for a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) is found in U.S.S.G. § 2K2.1. Under that guideline, a base offense level of 22 is required "if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and the defendant had one prior felony conviction of either a crime of violence or controlled substance offense." U.S.S.G. § 2K2.1(a)(3). The assault weapon statute in question describes "any of the firearms, or copies or duplicates of the firearms in any caliber, known as–(i) Norinco." 18 U.S.C. § 921(a)(30)(A)(i) (1994 & Supp. V 1999). Admitted into evidence at trial was the Norinco assault rifle that police recovered from Piggie's residence. As mentioned earlier in this opinion, a firearm rendered *permanently* inoperable is exempted from the class of firearms banned under the statute. 18 U.S.C. § 922(v)(3)(B)(ii). At trial, the parties stipulated that the Norinco firearm was inoperable, but no evidence was introduced that this weapon was rendered *permanently* inoperable. The District Court rejected Piggie's "Apprendi objection" to the base offense level computation and adopted the facts of the PSR, including Piggie's possession of the Norinco assault weapon. As noted supra, Piggie failed to make any objection to create a fact issue as

---

[6]We stress the importance of requiring counsel to state clearly the basis for an objection to a sentencing recommendation contained in the PSR. A clear articulation of the objection to the sentencing recommendation gives the district court an opportunity to resolve any disputed questions of fact or law and it guides appellate review by clarifying which objections have been preserved and which objections have been waived. See, e.g., United States v. Maurice, 69 F.3d 1553, 1557 (11th Cir. 1995).

to whether the Norinco assault weapon was permanently inoperable. On this record, we cannot conclude that the District Court committed plain error in setting Piggie's base offense level at 22. See United States v. Karam, 37 F.3d 1280,1285 (8th Cir. 1994) (citing United States v. Kenyon, 7 F.3d 783, 786 (8th Cir. 1993)), cert. denied, El Hani v. United States, 513 U.S. 1156 (1995).

In addition, we find the District Court did not err in applying a further two-level increase to Piggie's base offense level on the ground that the offense involved five firearms. See U.S.S.G. § 2K2.1(b)(1)(B). At sentencing, Piggie's counsel objected to the application of a two-level enhancement on the ground that there was no factual finding that he possessed more than a single firearm during the instant offense. Based on the evidence at trial and the statements during the sentencing hearing, we conclude the District Court did not clearly err in finding that Piggie was in possession of five firearms.[7]

## C.

Piggie's final contention is that the District Court erred in calculating his criminal history category by ruling that his two prior felony drug convictions were unrelated cases for sentencing purposes under section 4A1.2(a)(2) of the U.S.S.G. This argument has no merit. Under the sentencing guidelines, "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2, cmt. n. 3.

---

[7]As the District Court observed at sentencing, "Well, this is a case where I can rely upon the testimony which I heard at trial. And based upon that testimony I find that the defendant did possess all of these weapons that were in the house. In fact, I think there is no question about that." Sentencing Tr. at 5.

The record reflects that on January 13, 1998, Piggie was convicted in Missouri state court on two separate possession offenses. Complaints were filed for both these offenses on August 8, 1997. The first offense was for possession of a controlled substance with intent to distribute. That offense stems from Piggie's arrest on May 28, 1997, for possession of 3.97 grams of PCP and 1.9 grams of cocaine base. Piggie's second conviction for possession of a controlled substance was the result of his arrest on May 29, 1997, for possession of 0.7 grams of cocaine base. At sentencing on the federal charges, Piggie's counsel agreed that the two offenses were separated by an intervening arrest. Sentencing Tr. at 6.

On appeal, Piggie now requests that this Court hold that an arrest for purposes of U.S.S.G. § 4A1.2 occurs only when an individual is taken into custody pursuant to a complaint or formal charge. Piggie's argument is premised on the provisions of the Speedy Trial Act (STA) that govern determinations as to when the STA clock starts to run. See 18 U.S.C. § 3161(b) (1994 & Supp. V. 1999). According to Piggie, there was no intervening arrest (just a lawful detention) between the two possession offenses Piggie committed in May 1997 because the state of Missouri did not charge Piggie with either offense until August 8, 1997. Leaving aside the fact that Piggie waived this argument by not presenting it to the District Court, we reject it because (1) it is based on a misreading of the STA, and (2) the STA does not apply in any event to the meaning of the term "arrest" for sentencing purposes.

The STA requires that, "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The STA does not define "arrest" nor does it purport to give "arrest" anything other than its ordinary meaning. Piggie cites United States v. Jones, 676 F.2d 327, 329 (8th Cir.), cert. denied, 459 U.S. 832 (1982), for the proposition that under the STA an arrest does not occur until the government takes an individual into custody pursuant to a complaint or formal charge. Jones and other

decisions of this Court construing § 3161(b)[8] deal with the triggering of the right to a speedy trial, and they all stand, quite predictably, for the proposition that the triggering event is an arrest in connection with the crime for which the defendant is tried. They in no way lay down a new, generally applicable definition of "arrest." Piggie fails to cite any case in support of his position that the "triggering event" jurisprudence under the STA has any application to sentencing proceedings. The plain language of § 3161(b) requires only that the government file an indictment or information within thirty days of an individual's arrest. The Sentencing Guidelines do not provide a definition of "arrest" and we therefore must presume Congress intended the word to have its ordinary, well-understood meaning. See, e.g., Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). We are satisfied that, consistent with Piggie's expressed position at sentencing, he was convicted of two separate possession offenses that occurred on different dates with an intervening arrest. Accordingly, the District Court did not err by treating his two possession convictions as unrelated for sentencing purposes. See United States v. Peltier, 276 F.3d 1003, 1006-07 (8th Cir.) (holding district court correctly determined defendant's criminal history category by treating offenses as unrelated because intervening arrests separated them), cert. denied, 123 S. Ct. 246 (2002).

---

[8]See United States v. Wilson, 102 F.3d 968, 972 (8th Cir. 1996) ("The right to a speedy trial on a charge is triggered by arrest only where the arrest is the beginning of continuing restraints on defendant's liberty imposed in connection with the formal charge on which the defendant is eventually tried." (internal quotation and citation omitted)); United States v. Beede, 974 F.2d 948, 950-51 (8th Cir. 1992) ("Section 3161(b) requires that the arrest be 'in connection with' the charges on which the indictment or information is filed."), cert. denied, 506 U.S. 1067 (1993); United States v. Davis, 785 F.2d 610, 613 (8th Cir. 1986) (noting that "an arrest under § 3161(b) means a formal arrest, such as when a complaint, information or indictment has been filed" (citations omitted)); United States v. Stead, 745 F.2d 1170, 1172 (8th Cir. 1984); United States v. Boles, 684 F.2d 534, 535 (8th Cir. 1982).

Piggie's other argument—that these offenses should be considered related because they were consolidated for sentencing—is similarly of no avail. We have previously held, as is the case here, that "two or more sentences imposed at the same time 'are not related for purposes of § 4A1.2(a)(2) if the cases proceeded to sentencing under separate docket numbers, and there was no formal order of consolidation.'" United States v. Klein, 13 F.3d 1182, 1185 (8th Cir.) (quoting United States v. McComber, 996 F.2d 946, 947 (8th Cir. 1993)), cert. denied, 512 U.S. 1226 (1994); see also United States v. Bartolotta, 153 F.3d 875, 879 (8th Cir. 1998) (holding that defendant's prior "crimes were not consolidated because no formal order of consolidation was issued and the cases proceeded to sentencing under separate docket numbers") (internal citation and quotation omitted), cert. denied, 525 U.S. 1093 (1999).

## III.

For the foregoing reasons, we affirm Piggie's sentence.

LAY, Circuit Judge, concurring[9] and dissenting.

The sentence of the district court is a denial of justice.

The majority now approves an unlawful Base Offense Level.

Since the Government has the burden of proving the Base Offense Level, to start at a Base Offense Level of 22 under § 2K2.1(a)(3), the Government would have

---

[9]I concur in Part IIA and C of the majority opinion. I agree Apprendi v. New Jersey, 530 U.S. 466 (2000), has no application to Piggie's case. This is consistent with our earlier decision in United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir.), cert. denied, 531 U.S. 1026 (2000).

to prove that Piggie possessed an assault weapon which was not permanently inoperable.

Title 18 U.S.C. § 921(a)(30)(A)(i) designates a Norinco rifle as a semiautomatic assault weapon. However, § 922(v)(3)(B)(ii) provides an exception to this designation where the weapon has been rendered permanently inoperable. Here, the Government stipulated the Norinco was inoperable but then failed to submit any evidence as to whether the rifle was permanently inoperable or not. By agreeing that the weapon was inoperable, but failing to take the further step to demonstrate that the weapon at issue was not permanently inoperable, the Government failed to meet its burden of proving that the Norinco was an assault weapon for purposes of U.S.S.G. § 2K2.1(a)(3).

Under the majority opinion, the Defendant has been denied justice by the sentence that he has received. Under the commentary to U.S.S.G. § 2K2.1(a)(3), the definition of "assault weapon" does not include a weapon which is exempted under the provisions of 18 U.S.C. § 922(v)(3)(B)(ii). This section provides that a firearm is exempt by reason of the fact that it is inoperable and is permanently inoperable. The Government has stipulated that at the time of the Defendant's arrest, the Norinco was inoperable; however, it has produced no evidence that the gun is permanently inoperable. Having the burden of proof, the Government has failed to show the firearm is not exempt under the provisions of 18 U.S.C. § 922(v)(3)(B)(ii). Therefore, the Defendant cannot be assessed a Base Offense Level of 22.

What possible reason could the Government have for entering into a stipulation that the gun was inoperable? The Government was obviously "hoodwinking" the Defendant and his lawyer as to the requirements of the exemption statute. The Government knew or should have known that the Guidelines for exemption require that the rifle had to be permanently inoperable to be excluded. After the arrest, and at the time of the trial, the Government was in sole possession of the weapon. Thus,

it was the only party who could prove whether the gun was permanently inoperable or not.

The Government's actions lend the appearance of bad faith. Once the Government stipulated that the gun was inoperable, it was the Government's burden to show that it was not <u>permanently</u> inoperable to establish a Base Offense Level of 22. I fail to understand why we should allow the Government to play "hide and seek" with the Defendant and this Court.

The majority also overlooks a portion of the objection made by defense counsel at the sentencing hearing. The trial counsel objected first to the <u>Apprendi</u> issue, but then added as follows:

> I think the Court <u>then</u> has to make <u>a factual determination</u> because there has been none as to whether these enhancements should apply. . . . So I would then turn my factual argument to the Court and ask the Court to find that the government has not met its burden for the enhancement.

(emphasis added). If the district judge had heeded the objection, this appeal would not be here and the Defendant would only have been sentenced to a Base Offense Level of 20.

I fail to understand why the majority does not find Defendant's counsel's objection adequate. The words speak for themselves. Counsel is simply asking the court to make a factual determination as to whether these enhancements apply. The first part of the objection was clearly an <u>Apprendi</u> objection; however, the added objection could only relate to the absence of a finding as to the kind of firearms possessed by Piggie. Clearly, the Norinco should not have been counted as an assault weapon. Although the Government stipulated that it was inoperable, it failed to show that it was not permanently inoperable. Accordingly, it could not meet the definition of an assault weapon for purposes of 26 U.S.C. § 5845(a). The fact is, if the district

court had made such a factual determination, it would have had to find that the Norinco assault weapon was inoperable at the time of trial. This being so, it was then clearly incumbent upon the Government to prove that the assault weapon was not permanently inoperable. Based on the Government's proof, Piggie's Base Offense Level should have been set at 20.

In the leading case of United States v. Hammer, then-Chief Judge Richard S. Arnold wrote:

> The law of this Circuit is thus clear and consistent on the subject: the Confrontation Clause does not apply at sentencing, but facts relied upon by the District Court at sentencing must be proved by a preponderance of the evidence. The burden of proof is on the government with respect to the base offense level and any enhancing factors.

United States v. Hammer, 3 F.3d. 266, 272 (8th Cir. 1993) (emphasis added).

There is no question that the Defendant did not admit the facts alleged in the presentence report (to-wit, that the guns found in Piggie's possession were all operable). Furthermore, there is no question that the Defendant did object as to the absence of the identity of the guns that were involved. Had this objection been sustained, the Government would have been required to show that the Norinco assault weapon was not permanently inoperable.

In all fairness to both sides, I feel this matter should be remanded to the district court to hold an evidentiary hearing as to whether the Norinco assault weapon was in fact permanently inoperable. The case could then be decided on the basis of law rather than fiction.

We deal here with a question of a man's liberty. If a person's liberty is unlawfully denied for one day, one month, or one year, the court commits a crime of

unlawful punishment. This is not a game we play. It is true that our criminal justice system best survives under an adversarial process, but in doing so, the court should not allow this system to hide the truth and allow our trials to turn into a sporting event. On this basis we should remand the case to the district court to ascertain the truth.

For the foregoing reasons, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.