# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30488

United States Court of Appeals
Fifth Circuit

**FILED**
April 30, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RODERICK DOUGLAS,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before OWEN, Chief Judge, and HIGGINBOTHAM and WILLETT, Circuit Judges.

PER CURIAM:

Roderick Douglas pleaded guilty to one count of conspiracy under 18 U.S.C. § 371 to commit a deprivation of civil rights, an offense defined by 18 U.S.C. § 242, and was sentenced to sixty months in prison. On appeal, he asserts that the district court incorrectly calculated the advisory Guidelines range of imprisonment and contends that the district court erred in denying his request for a downward variance. We affirm the judgment.

## I

While serving as corrections officers at the Richwood Correctional Center in Louisiana, Roderick Douglas and four co-defendants came to suspect five

No. 19-30488

inmates of being affiliated with gangs. The inmates were questioned extensively, but none admitted to gang affiliation. Douglas, then a captain in the correctional guard force, and his co-defendants took the inmates to an area of the prison with no security cameras. The inmates were made to kneel while their hands were handcuffed behind their backs. Douglas approached the first inmate and asked if he was in a gang. After the inmate repeatedly denied his involvement in a gang, Douglas "sprayed the handcuffed inmate directly in the eyes with pepper spray." Douglas then approached a second inmate and made similar inquiries. In response to the second inmate's similar denials, Douglas likewise sprayed pepper spray in the second inmate's eyes.

At that point, Douglas handed the pepper spray to one of his co-defendants. Three of Douglas's co-defendants then "took [turns] spraying the remaining inmates in the eyes." As Douglas would later admit, "[e]ach inmate was handcuffed, compliant, not posing a physical threat to anyone, and not evading or struggling with any officer at the time he was sprayed."

Following this ordeal, the inmates were taken to a medical station for treatment. In an attempt to avoid suspicion, Douglas and his co-defendants filed false reports alleging that it became necessary to use pepper spray when, after questioning the inmates about their gang affiliations, one of the inmates attempted to escape. According to the falsified reports, the remaining inmates were only inadvertently sprayed while officers attempted to subdue the inmate who was attempting to escape. Douglas likewise lied about the incident when he later spoke via phone with the warden of the facility.

For their actions, Douglas and his co-defendants were charged in a seven-count indictment with offenses ranging from conspiracy to deprive civil rights to conspiracy to obstruct justice. In exchange for the government dismissing the remaining charges against him, Douglas pleaded guilty to conspiracy to commit a deprivation of civil rights, an offense under 18 U.S.C.

No. 19-30488

§ 371. Thereafter, a United States Probation Officer prepared a pre-sentence investigation report (PSR).

The PSR determined that Douglas's conduct merited a total-offense level of thirty. Most relevant here, this included a four-level enhancement pursuant to § 2A2.2(b)(2)(B) of the Sentencing Guidelines,[1] because the offense involved a dangerous weapon; a three-level enhancement pursuant to § 2A2.2(b)(3)(A),[2] because the offense resulted in bodily injury; and a six-level enhancement pursuant § 2H1.1(b),[3] because Douglas either qualified as a public official or was operating under color of law at the time of the offense. Because Douglas had no prior convictions or adjudications, the resulting advisory Guidelines range was 97-to-121 months in prison. Pursuant to § 5G1.1(a),[4] this range was subsequently reduced to sixty-months, the statutory maximum punishment permitted under 18 U.S.C. § 371.[5]

Prior to sentencing and again before the district court, Douglas argued that the PSR's advisory Guidelines calculation was erroneous. He specifically contended that pepper spray did not qualify as a dangerous weapon under § 2A2.2(b)(2)(B),[6] that the victims in this case did not sustain bodily injury, and that he was not a public official nor acting under color of law at the time of the offense. In support of his first two arguments, a retired police officer, Mark Johnson, testified as an expert witness at the sentencing hearing.

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2A2.2(b)(B) (U.S. SENTENCING COMM'N 2018).

[2] *Id.* § 2A2.2(b)(3)(A).

[3] *Id.* § 2H1.1(b).

[4] *Id.* § 5G1.1(a).

[5] *See id.* (providing that "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence"); *see also* 18 U.S.C. § 371 (noting that any violation of this provision carries with it a maximum penalty of five years in prison).

[6] U.S. SENTENCING GUIDELINES MANUAL § 2A2.2(b)(B) (U.S. SENTENCING COMM'N 2018).

No. 19-30488

Johnson opined that pepper spray is an effective "pain compliance tool" that generally leaves no lasting injuries. During cross examination, however, Johnson acknowledged that severe injuries are possible if the spray is administered in close proximity to the recipient. As to his final objection, Douglas argued that as a corrections officer in a private prison, he was neither a public official nor operating under the color of law at the time of the offense.

The district court rejected each argument. After crediting Johnson's admissions during cross examination, the district court concluded that the pepper spray at issue here was "capable of inflicting death or serious bodily injury" when used at close range.[7] The district court likewise concluded the victims sustained bodily injury based on the fact that each victim was treated by a nurse after the incident and the fact that some of the victims required follow-on visits at a local hospital. Finally, the district court concluded Douglas was acting as a public official or under the color of law at the time of the incident. The court concluded that Douglas basically admitted to operating under the color of law by pleading guilty to having conspired to deprive civil rights. The court also found persuasive a D.C. Circuit opinion recognizing that "[p]rotecting the public from incarcerated criminals is a quintessentially a sovereign function,"[8] and our decision in *United States v. Thomas*, wherein we held that a private prison guard was a public official under the federal bribery statute.[9]

Thereafter, the court considered Douglas's statements during allocution, several letters filed on his behalf, and his previously filed request for a downward variance before sentencing him to sixty months in prison. This

---

[7] *See id.* § 1B1.1 cmt. n.1(E) (defining a dangerous weapon as, inter alia, "an instrument capable of inflicting death or serious bodily injury").

[8] *United States v. Neville*, 82 F.3d 1101, 1106 (D.C. Cir. 1996).

[9] 240 F.3d 445, 448 (5th Cir. 2001).

appeal followed.

## II

We first consider whether the district court procedurally erred during Douglas's sentencing. As the Supreme Court has made clear, a district court commits "significant procedural error" when it "fail[s] to calculate (or improperly calculate[es]) the Guidelines range."[10]

On appeal, Douglas contends the district court erred in concluding that he should receive a four-level dangerous-weapon enhancement, a three-level bodily injury enhancement, and a six-level public official or color-of-law enhancement. Because Douglas properly preserved his objection to each enhancement below, we review the district court's "application of the Guidelines de novo and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error."[11] Under these standards, the district court's application of each enhancement survives appellate review.

As to the four-level dangerous-weapon enhancement, "[w]hether an item is a dangerous weapon is a finding of fact" that we review for clear error.[12] The Guidelines define a dangerous weapon as, inter alia, any "instrument capable of inflicting death or serious bodily injury."[13] "Serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical

---

[10] *Gall v. United States*, 552 U.S. 38, 51 (2007).

[11] *United States v. Velasco*, 855 F.3d 691, 693 (5th Cir. 2017) (emphasis omitted) (quoting *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013)).

[12] *Velasco*, 855 F.3d at 693 (citing *United States v. Estrada-Fernandez*, 150 F.3d 491, 497 (5th Cir. 1998) (per curiam)).

[13] U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. n.1(E) (U.S. SENTENCING COMM'N 2018); *see also id.* § 2A2.2 cmt. n.1 (noting that "'[d]angerous weapon' has the meaning given that term in §1B1.1" of the Guidelines).

intervention such as surgery, hospitalization, or physical rehabilitation."[14] In interpreting this language, several appellate courts have concluded that chemical agents such as pepper spray can qualify as dangerous weapons.[15] After reviewing the current record, we similarly conclude that the district court here did not clearly err in finding that pepper spray satisfied these requirements based on the facts present in this case.[16]

In arguing against application of the enhancement, Douglas stresses that pepper spray is "one of the lowest levels of force at an officer's disposal." He likewise notes that the product is sold commercially and that follow-on treatment after pepper spray exposure generally involves merely flushing the area with water. The record reflects that the pepper spray Douglas used, "Phantom," is more potent than the usual pepper spray, and as Douglas's own expert testified, severe injuries are possible when pepper spray is deployed in close proximity to the recipient, as the evidence reflects occurred here. His expert also classified pepper spray as a "pain compliance tool." Two victims were treated in a hospital after initial treatment in the prison infirmary, and one victim suffered protracted impairment in his right eye. In light of these facts, the district court's conclusion that pepper spray was "capable of inflicting death or serious bodily injury"[17] was certainly plausible. Consequently, the district court did not clearly err in applying the four-level dangerous-weapon

---

[14] *Id.* § 1B1.1 cmt. n.1(M).

[15] *See, e.g.*, *United States v. Neill*, 166 F.3d 943, 949-50 (9th Cir. 1999) (concluding that pepper spray qualified as a dangerous weapon); *United States v. Bartolotta*, 153 F.3d 875, 879 (8th Cir. 1998) (same but for mace); *United States v. Dukovich*, 11 F.3d 140, 141-42 (11th Cir. 1994) (same but for tear gas).

[16] *See Velasco*, 855 F.3d at 693 (citing *Estrada-Fernandez*, 150 F.3d at 497).

[17] U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. n.1(E) (U.S. SENTENCING COMM'N 2018).

enhancement here.[18]

Douglas's arguments against application of the three-level bodily injury enhancement fare no better. The "district court's determination concerning whether [a victim] sustained bodily injury within the meaning of § 2A2.2 is a factual finding, reviewable under [the] clear error standard."[19] The Guidelines define bodily injury as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."[20] Douglas's arguments against the enhancement mirror those he made against the dangerous-weapon enhancement. He argues, for example, that the enhancement was inappropriate because pepper spray is "not known to have long lasting effects or cause great bodily injury." But under our precedent, application of the enhancement turns "not on the actions of the defendant, but rather on the injury sustained."[21] Here, the district court did not clearly err in concluding that the victims sustained bodily injury.[22] As outlined in the PSR, each of the victims sought medical attention after the incident. At least two victims required follow-on treatment at local hospitals, with one of those victims requiring treatment after complaining he could not see out of his right eye. The district court was entitled to credit these statements and to consequently apply a three-level bodily injury

---

[18] *See United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006) (noting that our court "uphold[s] a district court's factual finding on clear error review so long as the enhancement is plausible in light of the record as a whole" (citing *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006))).

[19] *United States v. Lister*, 229 F. App'x 334, 340 (5th Cir. 2007) (citing *United States v. Isaacs*, 947 F.2d 112, 114 (4th Cir. 1991)).

[20] U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. n.1(B) (U.S. SENTENCING COMM'N 2018); *see also id.* § 2A2.2 cmt. n.1 (noting that "'bodily injury,' [has] the meaning given [to it] in § 1B1.1" of the Guidelines).

[21] *United States v. Guerrero*, 169 F.3d 933, 946 (5th Cir. 1999) (emphasis omitted) (collecting cases).

[22] *See Lister*, 229 F. App'x at 340 (citing *Isaacs*, 947 F.2d at 114).

enhancement.[23]

Finally, we reject Douglas's argument that he should not have received a six-level enhancement pursuant to § 2H1.1(b).[24]   By its terms, the enhancement applies if "the defendant was a public official at the time of the offense" or "the offense was committed under color of law."[25]  After considering each party's arguments, we conclude that Douglas's "offense was committed under color of law."[26]  We therefore need not decide whether Douglas qualified as a public official at the time of the offense.

As an initial matter, we note that the commentary to § 2H1.1(b) provides no guidance as to what type of conduct qualifies as occurring under the "color of law."   Nevertheless, we are not without any guideposts when it comes to interpreting this term.  For instance, we find it telling that § 2H1.1(b) includes 18 U.S.C. § 242 in its list of statutory provisions.[27]   That statute punishes "[w]hoever, *under color of any law*, . . . willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."[28]  Whatever the term's outer bounds may be, it is logical to infer that it was meant to cover conduct which, at a

---

[23] *See United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) (noting that "a PSR [generally] bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations" (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012))).

[24] Our court has not directly considered whether a district court's decision to apply the color-of-law enhancement constitutes a factual finding entitled to deference or a legal conclusion that should be reviewed de novo.  Nevertheless, we leave this decision for another day.  The parties do not address the issue in their briefs nor is the standard of review outcome determinative on appeal.  Even assuming de novo review is required, the enhancement was properly applied in this case.

[25] U.S. SENTENCING GUIDELINES MANUAL § 2H1.1(b)(1) (U.S. SENTENCING COMM'N 2018).

[26] *Id.*

[27] *See id.* at cmt.

[28] 18 U.S.C. § 242 (emphasis added).

minimum, would satisfy the same term in 18 U.S.C. § 242.

Our inclination to look to 18 U.S.C. § 242 for guidance is reinforced by our analysis in *United States v. Hatley*, an unpublished decision.[29]  There, the defendant challenged application of the color-of-law enhancement despite having pleaded guilty to violating 18 U.S.C. § 242.  We quickly dismissed the challenge to the enhancement based entirely on the defendant's plea colloquy.[30]  In line with our decision in *Hatley*, we therefore conclude that conduct satisfying 18 U.S.C. § 242's color-of-law requirement necessarily satisfies § 2H1.1(b)'s corresponding color-of-law requirement.

In this case, Douglas's conduct would have unquestionably satisfied the color-of-law requirement identified in 18 U.S.C. § 242.  As we explained in *United States v. Causey*, a defendant's actions satisfy 18 U.S.C. § 242's color-of-law requirement if the defendant "misuse[s] or abuse[s] his official power"[31] and "there is a nexus between the victim, the improper conduct[,] and [the defendant's] performance of official duties."[32]  Here, Douglas indisputably misused or abused his authority by leveraging his official status to both render his victims helpless and then harm them.  Moreover, his quest for information pertaining to the victims' alleged gang affiliations demonstrates a sufficient nexus "between the victim[s], the improper conduct[,] and [Douglas's] performance of official duties."[33]  Nor would Douglas's conduct have fallen outside the gambit of 18 U.S.C. § 242 merely because he worked for a private prison.  In *United States v. Wallace*, an unpublished decision, we held that

---

[29] 717 F. App'x 457 (5th Cir. 2018).

[30] *Id.* at 463.

[31] 185 F.3d 407, 415 (5th Cir. 1999) (citing *West v. Atkins*, 487 U.S. 42, 50 (1988)).

[32] *Id.* (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 n.4 (5th Cir. 1994) (en banc)).

[33] *Id.* (citing *Doe*, 15 F.3d at 452 n.4).

No. 19-30488

private jailers can be held liable under 18 U.S.C. § 242 for improper conduct.[34] We see no reason why the same result should not attach here. Consequently, the district court did not err in applying a six-level color-of-law enhancement under § 2H1.1(b).

## III

Next, we consider whether the district court erred in denying Douglas's request for a downward variance. As we made clear in *United States v. Haro*, an unpublished decision, an allegation "that the district court erred in failing to grant a downward variance . . . amounts to a challenge to the substantive reasonableness of [the defendant's] sentence."[35] We review such claims under the abuse of discretion standard[36] while simultaneously recognizing that "a sentence within a properly calculated Guideline range is presumptively reasonable."[37] We "infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines."[38] To rebut the presumption, the defendant must demonstrate "that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[39] Under that framework, Douglas fails to demonstrate that his within-guidelines sentence was substantively unreasonable.

In his brief to this court, Douglas addresses the 18 U.S.C. § 3553(a) factors and explains why, in his estimation, a lower sentence was appropriate.

---

[34] No. 00-40242, 2001 WL 274098, at *1-2 (5th Cir. Feb. 12, 2001) (per curiam).

[35] 753 F. App'x 250, 256-57 (5th Cir. 2018) (per curiam).

[36] *See Gall v. United States*, 552 U.S. 38, 51 (2007).

[37] *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006).

[38] *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (quoting *United States v. Mares*, 402 F.3d 511, 519-20 (5th Cir. 2005)).

[39] *Id.* (citing *United States v. Nikonova*, 480 F.3d 371, 376 (5th Cir. 2007)).

No. 19-30488

He cites statistical evidence suggesting his sentence exceeded the average and median sentences imposed for civil rights crimes in both 2016 and 2017, and attacks his advisory Guidelines range by arguing that comparatively more severe offenses could theoretically result in a comparatively similar advisory range. These arguments, however, mirror those he made before the district court in his sentencing memorandum. The district court expressly acknowledged its consideration of these arguments before imposing a sixty-month sentence. Douglas is effectively asking us to reweigh the district court's calculus of the relevant factors, which we will not do.[40] We therefore conclude that the district court's decision to impose a sixty-month sentence here was substantively reasonable.

\* \* \*

The district court's judgment is AFFIRMED.

---

[40] *See Gall*, 552 U.S. at 51.