# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2022

Lyle W. Cayce
Clerk

No. 21-40307

United States of America,

*Plaintiff—Appellee*,

*versus*

Hector Fernando Blanco,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:18-CR-26-1

Before Owen, *Chief Judge*, and Higginbotham and Elrod, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Hector Fernando Blanco was charged with forcibly and intentionally assaulting his then-girlfriend, Morgan Greer, on a Royal Caribbean cruise ship that departed from Galveston, Texas. Blanco subsequently pleaded guilty. Based on his presentence report (PSR), which included a three-level "bodily injury" enhancement and 3 additional criminal history points for a previous conviction, the district court sentenced Blanco to 36 months of imprisonment and 2 years of supervised release. Blanco objected to the bodily injury enhancement and now appeals both the enhancement and the

criminal history points that factored into his PSR. Because the district court erred in assessing 3 criminal history points for a stale 2002 conviction, which affected Blanco's substantial rights, we VACATE his sentence and REMAND for resentencing. We AFFIRM the district court's application of the bodily injury enhancement.

I.

On November 18, 2018, Blanco intentionally assaulted Greer in a cabin the pair shared aboard the Royal Caribbean cruise ship "Liberty of the Seas," while in international waters approximately 45 miles from Galveston, Texas. Blanco and Greer were dating at the time of the assault. At approximately 2:00 a.m. on November 18, Blanco entered the cruise ship cabin highly intoxicated while Greer was asleep. Blanco searched through Greer's cellphone and confronted her about various pictures and text messages that she allegedly sent to her ex-husband.

The confrontation escalated when Blanco put his hands over Greer's mouth, grabbed a bath towel, and told Greer she was going to die or be thrown overboard. Blanco subsequently twisted the bath towel, wrapped it around Greer's neck and began to choke her. Blanco then dragged Greer by the neck on the floor toward the balcony, threatening to throw her overboard. Fearing that she would be strangled, knocked unconscious, or thrown overboard, Greer bit Blanco's hand in an effort to escape.

Greer ultimately escaped and reported the assault to ship personnel. Greer asked to see the ship's doctor and was initially seen by an intake nurse who documented that Greer experienced pain in her neck, but had no bruises, visible marks, or wounds. The ship's doctor also noted that there were no signs of physical abuse but prescribed pain medication and strongly advised Greer to see her home physician at the end of the cruise. The ship's security office began an investigation, which was completed by the Federal Bureau of

Investigation once the ship arrived back in Galveston, Texas. FBI Agent Laura Brunstetter interviewed Greer when the ship docked in Galveston—eight hours after the assault—and saw bruising on Greer's neck, chin, the sides of her face, as well as red marks on her scalp. The FBI also gathered physical evidence, including a towel that contained human hair with the root still attached—which was confirmed to belong to Greer.

Blanco was charged and pleaded guilty to one count of "forcibly and intentionally assault[ing] Morgan Greer, who was then [his] dating and intimate partner, by attempting to strangle and suffocate her with his hands and a bath towel," while "within the special maritime and territorial jurisdiction of the United States and within the jurisdiction of the [c]ourt," in violation of 18 U.S.C. §§ 7, 113(a)(8), 3238.

The district court ordered and adopted the probation officer's PSR based on the 2018 version of the Sentencing Guidelines, which calculated an offense level of 17. This calculation included a base offense level of 14, a three-level enhancement for strangling or attempted strangling of an intimate partner, a three-level enhancement for bodily injury sustained by Greer, and a three-level reduction for acceptance of responsibility. The PSR also calculated Blanco's criminal history at a category V based on several previous convictions, including a 2002 conviction for operating a motor vehicle after a lifetime forfeiture of his driver's license. Based on the PSR calculations, Blanco faced a Guidelines range of 46–57 months of imprisonment.

Blanco objected to the bodily injury enhancement, arguing that the evidence was insufficient to show that Greer suffered bodily injury as defined by the Guidelines. In support of his objections, Blanco submitted the report of the medical examination that took place just after the assault and photographs taken both before and after the assault. The Government filed a response asserting that forthcoming sentencing testimony from Greer and

Agent Brunstetter would establish that Greer suffered bodily injury that was painful and obvious as a result of the assault.

At sentencing, the district court considered arguments from counsel related to Blanco's objection and the testimony from Greer and Agent Brunstetter.  Overruling Blanco's objection, the district court acknowledged the Guidelines range of 46–57 months of imprisonment, granted Blanco's request for a downward variance, and imposed a below-Guidelines sentence of 36 months of imprisonment and 2 years of supervised release.  Blanco timely appealed.

## II.

For the first time on appeal, Blanco challenges the PSR calculation for his criminal history category that was adopted by the district court.  He argues that the district court erred in assessing three criminal history points for a stale 2002 conviction, thereby affecting his substantial rights because the district court used a higher imprisonment range as a starting point.  We agree.

Blanco contends that—based on this Court's precedent and the plain language of the criminal history calculations in the Guidelines—his 2002 sentence was too old to receive criminal history points.  Blanco claims that the sentence imposed on his 2002 conviction for operating a motor vehicle after forfeiture of his driver's license for life did not total more than 13 months and was originally imposed more than 10 years before the commencement of the assault.  He further argues that this improper assessment affected his substantial rights and the fairness of his judicial proceedings because the district court incorrectly used a higher Guidelines range as a starting point to apply its downward variance.

The government concedes that the district court committed clear error in assigning three criminal history points for Blanco's 2002 conviction.

No. 21-40307

However, the government contends that the error did not affect Blanco's substantial rights because the district court's sentencing decision was based on factors independent of the Guidelines. We agree with Blanco.

Because Blanco did not raise this objection in district court, we review this issue for plain error. *United States v. Johnson*, 943 F.3d 735, 737 (5th Cir. 2019). To prevail, Blanco "must show a forfeited error that is clear or obvious and that affects his substantial rights." *Id.* Even if Blanco makes the requisite showing, we may exercise our discretion to correct the error "only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

The Sentencing Guidelines direct district courts to calculate a defendant's criminal history score in part by assessing points for each of the defendant's prior sentences of imprisonment. U.S.S.G. § 4A1.1. Three criminal history points are added for each sentence of imprisonment exceeding one year and one month. *Id.* § 4A1.1(a). Further, to qualify as a sentence of imprisonment, the defendant must actually serve a period of imprisonment. *Id.* § 4A1.2, cmt. 2.

Blanco was assigned three criminal history points for a 2002 conviction for operating a motor vehicle after a lifetime forfeiture of his driver's license. This conviction resulted in a four-year prison term, but two years were suspended to at home confinement and two years were probated. Blanco's probation was ultimately revoked, and he was sentenced to a one-year prison term.[1]

---

[1] When computing criminal history points after a defendant's probation is revoked, as here, the original term of imprisonment is added to any term of imprisonment imposed upon revocation. *See* U.S.S.G. § 4A1.2(k)(1).

Because Blanco's original sentence was probated, the term of imprisonment used to calculate his criminal history points should have been the one-year term after revocation of his probation. *See Id.* § 4A1.2(k)(1) & cmt. 11; *see also United States v. Rodriguez-Parra*, 581 F.3d 227, 229–30 (5th Cir. 2009) (noting that the suspended part of a sentence is not part of the sentence of imprisonment). Blanco's PSR also indicates that the sentence for his 2002 conviction was originally imposed more than ten years prior to the assault of Greer.

When "a straightforward application of the [G]uidelines" reveals the error in applying a defendant's criminal history points, the error was clear and obvious. *United States v. Torres*, 856 F.3d 1095, 1099 (5th Cir. 2017). Thus, Blanco should not have been assessed any points for the 2002 conviction because he did not receive a term of imprisonment that exceeded one year and one month and his sentence was imposed over ten years before the assault. *See* U.S.S.G. § 4A1.2(e); *see also United States v. Arviso-Mata*, 442 F.3d 382, 385 (5th Cir. 2006) (explaining that if criminal history points are to be assessed for a term of imprisonment less than one year and one month, the term must have been imposed within ten years of the instant offense); U.S.S.G. § 4A1.2(k)(2)(C) (explaining that when a new term of imprisonment is imposed following revocation of probation and the total term is less than one year and one month, the date of the original sentence is used to determine the ten-year period). This is a clear and obvious error by the district court.

Blanco must also show that the error affected his substantial rights and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Johnson*, 943 F.3d at 737. The substantial rights prong of our plain error review requires the appellant to "show a reasonable probability, that but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)

(internal quotation marks and citation omitted).  The district court's reliance on an incorrect Guidelines range will usually suffice to show an effect on the defendant's substantial rights where "the record is silent as to what the district court might have done had it considered the correct Guidelines range." *Id.* at 201.  "Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*"  *Id.* at 199 (internal quotation marks and citations omitted).

Further, "[i]n the ordinary case . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018).  Because of "the role the district court plays in calculating the range and the relative ease of correcting the error," the potential deprivation of liberty from a Guidelines error undermines "the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1908.  As we have also stated, exercising our discretion in correcting a "plain procedural error in sentencing proceedings" is not based upon Blanco's criminal history.  *United States v. Sanchez-Arvizu*, 893 F.3d 312, 317–18 (5th Cir. 2018).  Thus, where the first three prongs are met, the Supreme Court "expects relief to ordinarily be available to defendants in sentencing cases."  *United States v. Urbina-Fuentes*, 900 F.3d 687, 699 (5th Cir. 2018) (internal quotation marks and citation omitted).

The government argues that the district court imposed a downward variance based on Blanco's "history and other characteristics" and other 18 U.S.C. § 3553(a) sentencing factors—independent of the Guidelines.  The district court noted Blanco's "long criminal history"—though many of his offenses were traffic-related—and expressed concerns about deterrence based on his repeated driving without a license although he had been

"banned from driving for life." However, in its decision to grant a downward variance from the original Guidelines range, the district court considered Blanco's criminal history as "overrepresented."

While Blanco's criminal history and other characteristics were factors in his below-Guidelines sentence, the Guidelines were still the starting point and basis for his sentence. The record reflects that, at sentencing, the district court expressly and repeatedly mentioned that it considered the Guidelines in its decision. In granting Blanco's request for a downward variance, the court stated that it "considered the [G]uidelines, and based upon the totality of factors . . . sentence[d] the defendant to 36 months." The district court further noted that it "considered the Guidelines" to find that a variance was "consistent with" and had "take[n] into account the purposes of 18 U.S.C. § 3553(a)." Although the district court ultimately varied from the Guidelines range it originally calculated, a defendant's substantial rights are affected if: (1) a district court uses the Guidelines as a starting point; (2) the Guidelines calculation is incorrect; and (3) the record is silent as to what the district court might have done had the Guidelines range been correct. *See Molina-Martinez*, 578 U.S. at 199–200. All three are present in this case.

Had Blanco's PSR been calculated correctly, his resulting criminal history category would have been IV and not the category V score he was originally assessed. *See* U.S.S.G. ch. 5 pt. A. A category IV score combined with a total offense level of 17 would have produced a Guidelines range of 37 to 46 months rather than the 46 to 57 months the district court calculated. U.S.S.G. ch. 5 pt. A. The record further reflects that the district court's reliance on the Guidelines as a basis for his sentence—although it ultimately departed from them—shows a reasonable probability that his sentence would have been different. *See Molina-Martinez*, 578 U.S. at 194. The failure to correct this error in the Guidelines calculation affected Blanco's substantial

rights and seriously affected the fairness, integrity, and public reputation of his judicial proceedings.[2]

Because the district court erred in assessing three criminal history points for Blanco's 2002 conviction, we therefore vacate his sentence and remand for resentencing.

## III.

Blanco also argues that the district court erred by assessing a three-level bodily injury enhancement under U.S.S.G. § 2A2.2(b)(3)(A). We disagree.

Blanco contends that the district court's assessment of the three-level bodily injury enhancement was in error because there was insufficient evidence that Greer sustained a bodily injury as defined by the Guidelines. In particular, he maintains that the evidence failed to show that Greer's injuries were painful and obvious or were the type for which medical care ordinarily would be sought.

The government argues that, in light of the record, it was plausible for the district court to find Greer sustained a bodily injury under § 2A2.2(b)(3)(A). Specifically, the government points to: (1) Greer's testimony related to the pain she sustained during the assault; (2) the forensic evidence of Greer's hair with the root still attached recovered from the bath towel; and (3) Agent Brunstetter's testimony related to her observation and photographing of bruising on Greer's face, neck, and knee and red marks on her scalp.

---

[2] We also reject the government's additional argument that because Blanco's sentence was below both the correct and incorrect Guidelines range his substantial rights were not affected.

We review the "district court's interpretations of Guidelines de novo and its factual findings for clear error." *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010); *see also United States v. Lister*, 229 F. App'x 334, 339 (5th Cir. 2007) (involving bodily injury enhancement). Whether Greer sustained a bodily injury under U.S.S.G. § 2A1.2 is a factual finding that is reviewed for clear error. *United States v. Douglas*, 957 F.3d 602, 607 (5th Cir. 2020); *see also Lister*, 229 F. App'x at 340. A factual finding is not clearly erroneous if it is plausible in light of the whole record. *United States v. Ruiz-Hernandez*, 890 F.3d 202, 211 (5th Cir. 2018).

"Sentencing enhancements must be proven by a preponderance of the evidence." *Id.* (internal quotation marks and citations omitted). Section 2A2.2(b)(3)(A) applies a three-level enhancement in cases of aggravated assault if the victim sustained bodily injury. The Guidelines define bodily injury as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. 1.B; *see also* § 2A2.2, cmt. 1 (stating that, for purposes of § 2A2.2, the term "bodily injury" has the meaning given that term in § 1B1.1). The enhancement turns on the injury sustained by Greer and not on the actions of Blanco. *United States v. Guerrero*, 169 F.3d 933, 946 (5th Cir. 1999). Further, testimony from the victim about the injury sustained provides strong evidence to support the bodily injury enhancement. *Id.* at 947.

Blanco does not dispute that Greer suffered pain; rather, he contends that her injuries were not sufficient to satisfy § 2A2.2. He argues that Greer only sought medical attention for security purposes and that an evaluation by the ship's doctor and nurse noted neck pain but no visible marks or wounds. Further, he contends that, although photographs taken after the assault appear to show bruises on Greer's neck, cheek, and leg as well as red marks on her neck, cheek, and scalp, they are similar to marks presented in other

No. 21-40307

photographs taken before the assault took place.  This argument not only contradicts properly credited witness testimony, but it also downplays the record's reflection of the brutal nature of the assault.

The district court properly credited Greer's sentence hearing testimony that she experienced pain as a result of the assault; that she had trouble breathing, was dizzy, and saw black spots when she was choked; that her neck was sore for a week; that she had trouble breathing on the second day after the assault; and that she asked to see a doctor while still on the ship. In addition, both Greer and Agent Brunstetter testified that Greer suffered bruises from the assault.  In fact, Agent Brunstetter testified that she could still see bruising on Greer's face at the November 21, 2018 initial appearance—which Greer tried to cover with makeup.

The PSR and its Addendum provide further evidence of bruising. Agent Brunstetter also testified that the lighting was poor in the original photographs taken shortly after the assault, so some of the photographs did not accurately portray what she observed during her interview with Greer. The district court was entitled to credit Agent Brunstetter's testimony and the information in the PSR Addendum explaining the lack of obvious bruising in the photographs.  *See United States v. Harris*, 740 F.3d 956, 968 (5th Cir. 2014).  In addition, the record contains evidence of Greer's hair loss from the root that was found on a towel in the cabin.

We have indicated that the bodily injury enhancement may apply even if the injury is not both painful and obvious and that the absence "of bruising, swelling, or bleeding is not dispositive." *United States v. Washington*, 500 F. App'x 279, 283 (5th Cir. 2012) (affirming the bodily injury enhancement when the victim was punched in the nose, although there was no evidence of physical injury and the victim did not seek medical care); *see also United States v. Smith*, 822 F.3d 755, 765 (5th Cir. 2016) (affirming bodily injury

enhancement where a bank customer was thrown to the ground from a chair and kicked, and a bank employee sustained bruising and a small amount of hair loss).

In light of this evidence, it is plausible that Greer suffered bodily injury as defined by the Guidelines. *See Ruiz-Hernandez*, 890 F.3d at 211. Therefore, we affirm the district court's application of the bodily injury enhancement

## IV.

Because the district court erred in assessing three criminal history points for a stale 2002 conviction, which affected Blanco's substantial rights, we VACATE his sentence and REMAND for resentencing. We AFFIRM the district court's application of the three-level bodily injury enhancement.