# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2025

Lyle W. Cayce
Clerk

_____

No. 23-40717

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Andres Garcia, Jr.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CR-2497-1

_____

Before Dennis, Haynes, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Andres Garcia, Jr. challenges the application of a career offender enhancement under section 4B1.1 of the United States Sentencing Guidelines, and the calculation of his criminal history. We AFFIRM the district court's application of the career offender enhancement but VACATE Garcia's sentence and REMAND for resentencing.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-40717

I

After Andres Garcia, Jr. pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine, the United States Probation Office prepared a presentence report (PSR).[1] The amended PSR calculated a base offense level of 32. In calculating Garcia's criminal history, the PSR noted that he had prior Texas convictions for robbery,[2] aggravated assault with a deadly weapon,[3] and criminal trespass,[4] as well as a federal conviction for aiding an illegal alien to enter the United States. The PSR assigned Garcia ten criminal history points: three for the aggravated assault, three for the robbery, and two for each of the other convictions. This resulted in a criminal history category of V.

Because of his robbery and aggravated assault convictions, the PSR applied a career offender level enhancement under U.S.S.G. § 4B1.1. This enhancement raised Garcia's total offense level to 37 and his criminal history

---

[1] The PSR was revised twice: first, to reflect updates in the Probation Office's investigation which triggered an increase in Garcia's base offense level, and again, to categorize Garcia as a career offender.

[2] Garcia was convicted of robbery under TEXAS PENAL CODE § 29.02. The details of the offense are not on the record, and the state court judgment for Garcia's conviction does not specify whether the conviction was under § 29.02(a)(1) or § 29.02(a)(2). According to the PSR, the indictment "reflects [that] on July 4, 2017, the defendant did then and there, while in the course of committing the offense of theft of property and with the intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause[d] bodily injury to [another] by striking him with a firearm, and the defendant did then and there use or exhibit a deadly weapon."

[3] Garcia was convicted of aggravated assault under TEXAS PENAL CODE § 22.02(a)(2). The PSR notes that "according to the charging instrument, on February 13, 2015, the defendant did intentionally and knowingly threaten [another] with imminent bodily injury by pointing a firearm at [him], and [Garcia] did then and there use or exhibit a deadly weapon, to wit: a firearm during [the] commission of said assault."

[4] Garcia was sentenced to 56 days in custody for this crime.

2

category to VI under § 4B1.1(b), resulting in a sentencing range of imprisonment of 360 months to life. Garcia did not file any objections to the PSR.

At sentencing, the district court reduced Garcia's offense level by three levels for acceptance of responsibility, resulting in a total offense level of 34, a criminal history category of VI, and a guidelines range of 262 to 327 months of imprisonment. Garcia argued for a downward departure, citing an "overrepresentation of his criminal history," and referencing the career offender classification. The district court stated that the guideline range was "correctly calculated," but that "[it] [did] agree in part with [Garcia's counsel] that . . . despite all of [Garcia's criminal] history, that the guideline range . . . [was] excessive" and "would not satisfy the [§] 3553(a) factors," so it "[was] going to sentence [Garcia] to something that is less than that."

The court expressed concern "that even without the career offender enhancement, [Garcia's] criminal history category is V," so "a sentence that is somewhere up there is necessary in light of all of that history." It explained that "without that criminal history enhancement for being a career offender, . . . [it would] be looking at something in a criminal history category of V with the base offense enhancement still applying as a career offender."[5] The court concluded that it would sentence Garcia "to something that is still slightly less than the range [of 235 to 293 months] with a criminal history category of V." The district court ultimately sentenced Garcia to a below-guidelines sentence of 200 months of imprisonment, to be followed by five years of supervised release. Garcia appeals.

_____

[5] Under the Sentencing Guidelines, a base level offense of 34, and a criminal history category of V, yield a sentencing range of 235 to 293 months. U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

## II

We review preserved challenges to the district court's interpretation and application of the Sentencing Guidelines *de novo*, and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Where, as here, an error is not properly preserved, we review for plain error. *United States v. Peterson*, 977 F.3d 381, 392 (5th Cir. 2020).

Under the plain error standard, the defendant must show a legal error that is "clear or obvious" and that has "affected the [defendant's] substantial rights," by "'affect[ing] the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted). A district court commits clear and obvious error when a straightforward application of the Sentencing Guidelines results in the miscalculation of a defendant's criminal history points. *United States v. Blanco*, 27 F.4th 375, 380 (5th Cir. 2022). If Garcia satisfies his burden, this court has discretion to remedy the error "if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pucket*, 556 U.S. at 135 (citation omitted) (cleaned up).

## III

Garcia challenges the district court's application of the career offender enhancement.

In relevant part, a defendant qualifies for a career offender enhancement under the Sentencing Guidelines if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). A "crime of violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that[] (1) has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is one

of several enumerated offenses, including aggravated assault and robbery.[6] *Id.* § 4B1.2(a); *see id.* § 4B1.1 cmt. 1. To determine whether a prior conviction is a crime of violence under the Sentencing Guidelines, courts employ the "categorical approach." *United States v. Adair*, 16 F.4th 469, 470 (5th Cir. 2021). Our task is to determine "whether the elements of the statute of conviction meet the federal standard"; "the defendant's actual conduct" is irrelevant. *United States v. Carrasco-Tercero*, 745 F.3d 192, 195 (5th Cir. 2014).

In the case of the force clause, we "look at the statute itself and examine the elements of that crime . . . to determine whether the statute . . . necessarily and invariably requires the 'use . . . or threatened use of physical force.'" *United States v. Garrett*, 24 F.4th 485, 488 (5th Cir. 2022). "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the [force clause], and so cannot serve as a[] [predicate crime under the Sentencing Guidelines]." *Id.* (quoting *Borden v. United States*, 593 U.S. 420, 444 (2021)). In *Borden*, the Supreme Court held that because offenses with a mens rea of recklessness "do not require the . . . active employment of force against another person," they do not qualify as crimes of violence under the force clause of the Armed Career Criminal Act (ACCA). 593 U.S. at 444. Given the "identical operative language" of the ACCA's force clause, and the force clause in the Sentencing Guidelines, *compare* 18 U.S.C. § 924(e)(2)(B), *with* U.S.S.G. § 4B1.2(a)(1), we apply ACCA case law when analyzing § 4B1.2(a)(1). *Garner*, 28 F.4th at 682.

---

[6] The language of § 4B1.2(a)(1) is often referred to as the "force clause," while § 4B1.2(a)(2) is often referred to as the "enumerated offense clause." *See United States v. Garner*, 28 F.4th 678, 681 (5th Cir. 2022).

No. 23-40717

In the case of the enumerated offense clause, we "first determine the elements contained in the generic, contemporary meaning of that offense," *Adair*, 16 F.4th at 470 (citation omitted), and compare those elements with the elements of the statute forming the basis of the conviction, *Garner*, 28 F.4th at 684. Only when "the elements of the prior offense are the same or narrower than those of the generic offense," can it be "treated as an equivalent to the generic offense." *United States v. Martinez-Rodriguez*, 857 F.3d 282, 285 (5th Cir. 2017).

"Some statutes, however, are divisible—that is, a single statute may create multiple, distinct crimes, some violent, some non-violent." *Garrett*, 24 F.4th at 488. When a statute is divisible, "courts employ the 'modified categorical approach' to 'determine which crime formed the basis of the defendant's conviction.'" *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016 ) (quoting *Descamps v. United States*, 570 U.S. 254, 261–62 (2013)). This approach allows courts to "consult certain records pertaining to the prior offense to ascertain if the conviction rested on the generic or defined crime or instead was an over-inclusive offense that could not support a sentence enhancement." *Id.*

A

Garcia argues that his conviction for robbery under Texas Penal Code § 29.02 does not qualify as a crime of violence under U.S.S.G. § 4B1.1(a) for two reasons: (1) he was convicted of robbery-by-injury under § 29.02(a)(1), which is not a predicate offense under the force clause because it can be committed recklessly, and (2) § 29.02 is broader than the enumerated offense of robbery under § 4B1.2(a)(2). The Government contends that Garcia's argument is foreclosed by *United States v. Adair*, which held that a "Texas robbery conviction qualifies as a crime of violence under § 4B1.2(a)(2)." 16 F.4th at 470. When *Adair* was decided, robbery was

6

not defined in the Sentencing Guidelines, but the Guidelines were amended in 2023 to define robbery.[7] *Adair* is therefore distinguishable. Nevertheless, we conclude that a Texas robbery conviction constitutes a crime of violence under § 4B1.2(a)(2).

Ordinarily, when employing the categorical approach to determine whether a prior conviction is a crime of violence under the enumerated offense clause, we look to the "generic, contemporary meaning of [the] offense." *Id.* at 470. When the Sentencing Guidelines define the offense, however, "there is no need to examine anything beyond the plain meaning of the guidelines." *United States v. Alay*, 850 F.3d 221, 223 (5th Cir. 2017); *see also United States v. Santiesteban-Hernandez*, 469 F.3d 376, 378 (5th Cir. 2006) ("Because the enhancement provision does not define the predicate offense of 'robbery' we must first find its 'generic, contemporary meaning[.]'" (internal citation omitted)). Accordingly, we look to the elements of robbery as defined by the Guidelines to determine whether the elements of § 29.02(a) are "the same or narrower" than those of § 4B1.2(e)(3). *See Martinez-Rodriguez*, 857 F.3d at 285.

Section 4B1.2(e)(3) of the Guidelines defines robbery as

[T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase

---

[7] *See* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index 55–59 (2023), https://perma.cc/6ZRY-M6A2.

"actual or threatened force" refers to force that is sufficient to overcome a victim's resistance.

U.S.S.G. § 4B1.2(e)(3).

Under Texas law, a person commits robbery if, in the course of committing a theft, he "(1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code § 29.02(a).

The elements of robbery, as defined by the Sentencing Guidelines, are broader than the elements of § 29.02, because under U.S.S.G. § 4B1.2(e)(3), a defendant may be convicted of robbery if he, by fear of injury to another's person *or property*, unlawfully steals from another. Injury or threat of injury to someone's property, however, is not an element of Texas's robbery statute. *See* Tex. Penal Code § 29.02(a). Because the elements of § 29.02(a) "are the same *or narrower*" than those of the Sentencing Guidelines, Garcia's prior robbery conviction can be "treated as an equivalent" to U.S.S.G. § 4B1.2(e)(3). *Martinez-Rodriguez*, 857 F.3d at 285 (emphasis added).

The district court did not plainly err by finding that Garcia's robbery conviction constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(2).

B

Garcia next argues that his conviction for aggravated assault with a deadly weapon under Texas Penal Code § 22.02(a)(2) does not qualify as a crime of violence under U.S.S.G. § 4B1.1(a) because (1) it can be committed with a mens rea of recklessness, and (2) § 22.02 is broader than the enumerated offense of aggravated assault under § 4B1.2(a)(2). The Government asserts that Garcia's argument is foreclosed by *United States v. Guillen-Alvarez*, 489 F.3d 197 (5th Cir. 2007). We agree.

No. 23-40717

In *Guillen-Alvarez*, this court held that a conviction under § 22.02[8] "qualifies as a conviction for the enumerated offense of 'aggravated assault,' and therefore as a conviction for a crime of violence" under the enumerated clause of former U.S.S.G. § 2L1.2. 489 F.3d at 199; *see id.* (explaining that under former U.S.S.G. § 2L1.2(b)(1)(A)(ii), crimes of violence are defined, in part, as "any of a list of enumerated offenses, which include 'aggravated assault'"); *see also United States v. Rayo-Valdez*, 302 F.3d 314, 318 (5th Cir. 2002) (holding that the definitions for a crime of violence in § 4B1.2 and former § 2L1.2 should be construed consistently for enumerated offenses). We have since affirmed *Guillen-Alvarez*. *See, e.g.*, *United States v. Shepherd*, 848 F.3d 425, 427–28 (5th Cir. 2017) (reaffirming *Guillen-Alvarez*, holding that Texas aggravated assault under § 22.02(a)(2) is a crime of violence under U.S.S.G. § 2K2.1 and § 4B1.2); *United States v. Lujan*, No. 23-10145, 2023 WL 8184816, at *3 (5th Cir. Nov. 27, 2023) (unpublished) (stating that Lujan's argument that § 22.02 is broader than the enumerated offense of aggravated assault under § 4B1.2(a)(2) was foreclosed by *Guillen-Alvarez*).

Under *Guillen-Alvarez*, Garcia's aggravated assault conviction constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(2), so the district court did not plainly err.

---

[8] Section 22.02 provides, in relevant part, that a person commits aggravated assault under Texas law if he commits assault, as defined in Texas Penal Code § 22.01, and "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code § 22.02(a)(2). Under Texas Penal Code § 22.01(a), a person commits the offense of assault if he "(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."

## IV

Garcia argues that under U.S.S.G. § 4A1.1(b) and § 4A1.2(c)(1), he should not have been assessed two criminal history points for his prior criminal trespass conviction because he was not sentenced to a term of imprisonment for at least sixty days. The Government concedes that assessment of two points is a clear or obvious error.

Section 4A1.1 sets out the point allocations used to determine a defendant's criminal history:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

U.S.S.G. § 4A1.1(a)–(c).

The PSR assigned two criminal history points for Garcia's prior conviction for criminal trespass, even though he was only sentenced to 56 days of custody for the conviction. *See id.* § 4A1.1(b). Because Garcia was sentenced to less than 60 days of imprisonment, he should have received only one criminal history point for that sentence under § 4A1.1(c), and his total criminal history score should have been 9 instead of 10, resulting in a criminal history category of IV instead of V.

## A

Garcia must show that this error has affected his substantial rights by affecting the district court proceedings. *Puckett*, 556 U.S. at 135. Citing statements made during his sentencing hearing, Garcia argues that the district court relied on the miscalculation of his criminal history category.

The Government argues that there was no harm to Garcia's substantial rights because, when sentencing a career offender, a court may only downwardly depart one criminal history category under U.S.S.G. § 4A1.3(b)(3).

To establish that the alleged error affected his substantial rights, Garcia "must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). Where "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Id.* at 201. "Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*" *Blanco*, 27 F.4th at 381 (quoting *Molina-Martinez*, 578 U.S. at 199). "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 578 U.S. at 198.

"There may be instances when, despite [the] application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist," such as where "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," or if the court made it clear that the sentence was based on "factors independent of the Guidelines." *Id.* at 200. We must look to "[w]hat was driving this judge's decision to impose this sentence for this defendant." *United States v. Sanchez-Hernandez*, 931 F.3d 408, 411 (5th Cir. 2019).

The Government is correct that "[t]he extent of a downward departure . . . for a career offender within the meaning of § 4B1.1 (Career

Offender) may not exceed one criminal history category." *See* U.S.S.G. § 4A1.3(b)(3).[9] But the district court did not give any indication that it was granting a one-level departure and reducing Garcia's criminal history category from VI to V under § 4A1.3(b)(3); it did not mention § 4A1.3(b)(3) or "specify in writing" that it was downwardly departing under that provision, as required by § 4A1.3(c). Its statements are instead more consistent with a variance under 18 U.S.C. § 3553(a). *United States v. Mejia-Huerta*, 480 F.3d 713, 721 (5th Cir. 2007) ("[P]ost-*Booker*, a sentencing court may impose a non-Guidelines sentence, i.e., a "variance[,]" . . . if it calculates the proper sentencing range and references the broad array of factors set forth in § 3553(a)."); *see also United States v. Marcoccia*, 686 F. App'x 138, 141 & n.4 (3d Cir. 2017) (inferring from the district court's statements that it chose to grant a variance instead of a departure under § 4A1.3(b)(3)(A) because it would have been limited to a departure of only one criminal history category). The district court agreed with Garcia's counsel that the guideline range was excessive, "[a]nd not because [Garcia was] not improperly classified as a career offender," but because the "*range here would not satisfy the 3553(a) factors.*" Its statement of reasons for the 200-month sentence, which was 62 months below the low end of the guideline range that would have applied if it had reduced Garcia's criminal history

---

[9] Although this circuit has not considered U.S.S.G. § 4A1.3(b)(3), other circuits have interpreted § 4A1.3(b)(3) to enable a sentencing court to reduce a defendant's criminal history category when the court determines it is warranted. *See, e.g.*, *United States v. Grier*, 585 F.3d 138, 140–45 (3d Cir. 2009) (interpreting § 4A1.3(b)(3) (2003) which is identical to § 4A1.3(b)(3) (2023)); *United States v. Hilts*, 696 F. App'x 1, 3 n.2 (2d Cir. 2017) ("Horizontal departures are 'not without constraints,' including, most pertinent here, that career offenders may receive only a one-level departure, from criminal history category VI to V." (internal citations omitted)); *United States v. Andrews*, 705 F. Supp. 3d 142, 154 (S.D.N.Y. 2023) (assuming arguendo § 4A1.3(b)(3) can be applied retroactively and concluding that "[defendant's] criminal history category would at most be reduced from VI to V.").

category by one level to a V, specifically reflected a variance under § 3553(a) due to an overrepresentation of Garcia's criminal history.

The record appears to indicate that although the district court considered the overrepresentation of Garcia's criminal history when imposing a below-Guidelines sentence, ultimately, the Guidelines were the basis for the sentence. *See Blanco*, 27 F.4th at 381. The court repeatedly referenced the higher criminal history category of V as the *starting* point of its calculation. It expressed "concern . . .that even without the career offender enhancement, [Garcia's] criminal history category [was] V," so "a sentence that is somewhere up there [was] necessary in light of all that history." The court explained that even without the career offender enhancement, it would still "be looking at something in a criminal history category of V with the base offense enhancement still applying as a career offender." It specifically stated that it was "going to sentence [Garcia] to something that is still slightly less than the range that I just mentioned with a criminal history category of V." The record is silent on "what the district court might have done had it considered the correct Guidelines range." *Molina-Martinez*, 578 U.S. at 201. While the record shows that the district court considered Garcia's criminal history and whether a sentence within the guidelines range would satisfy the 18 U.S.C. § 3553(a) factors, it did not state that it would have imposed the same sentence independent of the Sentencing Guidelines. Accordingly, this error has affected Garcia's substantial rights.

B

Finally, Garcia must show that the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Blanco*, 27 F.4th at 380 (citation omitted).

"In sentencing cases, 'the Supreme Court "expects relief to ordinarily be available to defendants"' if the first three plain-error elements

are met." *United States v. Parra*, 111 F.4th 651, 663 (5th Cir. 2024) (quoting *Blanco*, 27 F.4th at 381). And "in the ordinary case, the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Blanco*, 27 F.4th at 381 (cleaned up) (citing *Rosales-Mireles v. United States*, 585 U.S. 129, 145 (2018)). This is because "the public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" *Rosales-Mireles*, 585 U.S. at 141. Indeed, this kind of "exercise of discretion . . . requires 'a case-specific and fact-intensive' inquiry." *Id.* at 142 (quoting *Puckett*, 556 U.S. at 142). And "[t]here may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction." *Id.*

Here, although the esteemed district court imposed a below-guidelines sentence, its statements indicate that it found the category V classification to be significant. This suggests that the category V classification is "reasonably likely to have resulted in a longer prison sentence than necessary." *Id.* at 143; *see also id.* at 144 ("The mere fact that [the defendant's] sentence falls within the corrected Guidelines range does not preserve the fairness, integrity, or public reputation of the proceedings."). The Supreme Court has said that "[t]he risk of unnecessary deprivation of liberty *particularly* undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error." *Id.* at 140 (emphasis added). Nor does the government identify any "countervailing factors" to justify allowing the error to go uncorrected. *See id.* at 142. This "means we must 'exercise our discretion' to remand." *United States v. del Carpio Frescas*, 932 F.3d 324, 333 (5th Cir.

2019) (footnote and brackets omitted) (citing *Rosales-Mireles*, 585 U.S. at 142).

Because Garcia was assessed two criminal history points for his prior trespass conviction, and the miscalculation affects his substantial rights, we vacate his sentence and remand for resentencing.

\*    \*    \*

The district court's application of the career offender enhancement is AFFIRMED. We VACATE Garcia's sentence and REMAND for resentencing.

No. 23-40717

Haynes, *Circuit Judge*, concurring in part, dissenting in part:

I concur in the determination that the career offender enhancement applies in this case. I respectfully dissent as to vacating the sentence due to the district court's consideration of a different guideline in deciding the downward departure.

To be clear, the guidelines range of 262-327 months determined by the district court was correct, and the majority opinion finds it correct. The issue of one criminal history point, rather than two, for the criminal trespass conviction did not affect that guidelines range because the district court correctly found that the career offender enhancement applied.

Thus, this is not a guidelines-range-error issue, which may have met prongs three and possibly four of the plain error standard. Instead, it is an issue of the district court deciding to do a downward departure. In that context only is when the district court considered a hypothetical sentencing scenario and said that the defendant would have been in a criminal history category of V ("if I recall correctly") instead of VI. The Government agrees with the defendant that, in the hypothetical scenario at issue, the criminal history category would have been IV rather than V but notes that, because of the defendant's career offender status, in reality the criminal history category could only go down to V. *See* U.S. Sent'g Guidelines Manual § 4A1.3(b)(3) (U.S. Sent'g Comm'n 2023) (limiting downward departures for career offenders to one criminal history category). But even if we consider the district court's statements an "error," I think the key is that the district court was not discussing the actual guideline that applied but rather a hypothetical about how much he would depart downwardly. That is not, in my view, something that affected the defendant's substantial rights. He does not have a substantial right to a specific downward departure. Indeed, whether to grant a downward departure is a matter in the district

court's discretion. *Koon v. United States*, 518 U.S. 81, 98–100 (1996). Thus, it is not proper to find this a substantial right.

I also strongly conclude that an error in the district court's hypothetical speculation about a downward departure from the *correct* guidelines range is not something where we should conclude that it affects the fairness, integrity or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If the district court had simply sentenced him within the 262-327 guidelines range, that would have been proper and not reversable. Thus, reversing at the request of the defendant who *benefited* from the discussion at issue makes no sense, as the discussion did not affect the fairness of the judicial proceedings to the defendant. Instead, the defendant ultimately benefitted by being sentenced to five fewer years than the bottom of the guidelines.

Thus, we should affirm in full. Because the majority opinion fails to do so, I respectfully dissent on the outcome.